WESTERN UNION TEL. CO. v. HENDERSON, Auditor.

(Circuit Court, D. Indiana, June 13, 1895.)

No. 9,126.

1. CONSTITUTIONAL LAW—SUIT AGAINST STATE.
    A suit against the auditor of a state, to restrain him from certifying and transmitting to the county auditors valuations of the property of complainant, for the purpose of taxation, pursuant to a statute (Act Ind. March 6, 1893)[1] claimed to be unconstitutional, on the ground that the acts sought to be enjoined would create a cloud upon complainant's title, and cause irreparable damage, is not a suit against the state.

2. SAME—ENACTMENT OF STATUTE—INDIANA ACT OF MARCH 6, 1893.
    Held, following the decision of the supreme court of Indiana, that the act of that state of March 6, 1893, relating to taxation, was duly enacted, and violates no provision of the constitution of the state.

3. SAME—INTERSTATE COMMERCE—STATE TARIFF.
    Held, further, that said act is not in violation of the constitution of the United States, as a regulation of commerce or as imposing a duty on im-

---

[1] For statute, see note at end of case.

ports or exports. W. U. Tel. Co. v. Taggart (Ind. Sup.) 40 N. E. 1051, approved.

This was a suit by the Western Union Telegraph Company against John Henderson, auditor of the state of Indiana, to restrain him from certifying valuations of the property of the complainant. The court granted a temporary restraining order. The defendant moves to dissolve such order, and also demurs to the bill.

Butler, Snow & Butler, for complainant.

W. A. Ketcham, Ind. Atty. Gen., Alonzo G. Smith, Merrill Moores, and Kern & Bailey, for defendant.

BAKER, District Judge. This is a suit in equity by the Western Union Telegraph Company, a corporation created and organized under the laws of the state of New York, and a citizen thereof, against John O. Henderson, auditor of state of the state of Indiana, and a citizen thereof, to restrain the defendant from certifying and transmitting to the several county auditors of the state the valuations of the property of the complainant in said counties for the purposes of taxation as fixed by the state board of tax commissioners under the provisions of an act of the general assembly of the state of Indiana approved March 6, 1893 (Acts 1893, p. 374; 3 Burns' Rev. St. Ind. § 8473 et seq.). The bill alleges that the defendant is threatening and about to certify and transmit said valuations for entry upon the tax duplicates of the several counties of the state, by means whereof an apparent charge against and cloud upon the title of the complainant's property would be wrongfully created, and that by this means great and irreparable damage and injury would be sustained by the complainant. It is alleged that the act of March 6, 1893, was not enacted in accordance with the provisions of the constitution of the state of Indiana; and, if it was so enacted, that it is invalid because in violation of various provisions of the constitution of the state of Indiana and of the constitution of the United States, which provisions are set forth with great particularity in the bill of complaint. It is further insisted that, if the above-mentioned act is not invalid for any of the foregoing reasons, the court ought to grant the injunctive relief prayed for because the state board of tax commissioners has adopted a rule of valuation the necessary result of which is to fix valuations on complainant's property higher than those fixed upon other property in the state. The court granted a temporary restraining order, and now the attorney general of the state moves the court to dissolve the same, and to dismiss the bill for want of equity. The sufficiency of the bill is also presented by a demurrer which asserts that the court is without jurisdiction to entertain the suit, because it is practically a suit against the state, and also on the ground that the bill does not state facts sufficient to constitute a cause of action entitling the complainant to any equitable relief.

The claim that the court is without jurisdiction has been earnestly and elaborately argued by the attorney general of the state both orally and upon a printed brief; and, while the court has at no

time felt any serious doubt of its jurisdiction, it has felt constrained to yield to the request of the attorney general, and examine the cases decided by the supreme court touching the jurisdiction of the circuit courts of the United States where suits are brought against officers of the state to restrain them from doing an alleged tortious or unlawful act under the pretended authority of an unconstitutional statute, or a statute which is claimed to be unconstitutional. The question lying at the threshold of every case in the courts of the United States is whether, on the face of the bill, assuming its allegations to be true, the court has jurisdiction. The cases decided by the supreme court are too numerous to justify a review of all of them, and I shall content myself with an examination of those in which the question of jurisdiction has been most directly and exhaustively considered.

Under the constitution, as it was originally adopted, it was held that a citizen of one state might sue any state other than that of his residence in the courts of the United States. Chisholm v. Georgia, 2 Dall. 419. The result of this decision led to a speedy adoption of the eleventh amendment to the constitution of the United States, which declares that "the judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The meaning of this amendment was first drawn in question in the case of Osborn v. Bank, 9 Wheat. 738, 846, which was a suit in equity brought in a court of the United States by the bank against the auditor and treasurer of the state of Ohio to restrain them from seizing the money of the bank and applying the same to the payment of taxes and penalties claimed to be due to the state. The state also asserted title to the money so taken by the defendants as its officers and agents. The question of jurisdiction was argued with conspicuous zeal and ability, and was decided on great deliberation, the court affirming the jurisdiction of the courts of the United States in one of the most masterly opinions ever delivered by that great expounder of the constitution, Chief Justice Marshall. He declared that:

"It may, we think, be laid down as a rule, which admits of no exception, that, in all cases where the jurisdiction depends on the party, it is the party named on the record."

The court added:

"The state not being a party on the record, and the court having jurisdiction over those who are parties on the record, the true question is not one of jurisdiction, but whether, in the exercise of its jurisdiction, the court ought to make a decree against the defendants; whether they are to be considered as having a real interest or as being only nominal parties."

Governor of Georgia v. Madrazo, 1 Pet. 110, was a suit to recover a sum of money, arising from the sale of certain slaves, which had been covered into the treasury of the state, and also to recover the possession of certain other slaves who had been illegally imported into the state, and who were in possession of the governor, pursuant to an act of congress, and also pursuant to an act of the general as-

sembly of the state. It was held that the claim was, in effect, one against the state, and, therefore, that the circuit court of the United States was without jurisdiction. The governor appeared in the case, and filed a claim on behalf of the state to the slaves remaining un-sold and to the proceeds of those who were sold. The court, by Mr. Chief Justice Marshall, say:

"The information of the governor of Georgia professes to be filed on behalf of the state, and is in the language of the bill filed by the governor of Georgia in behalf of the State against Brailsford, 2 Dall. 402. If, therefore, the state was properly considered as a party in that case, it may be considered as a party in this."

The chief justice further said:

"In U. S. v. Peters, 3 Dall. 121, the court laid down the principle that, although the claims of the state may be ultimately affected by the decision of a cause, yet, if the state be not necessarily a defendant, the courts of the United States are bound to exercise jurisdiction. In the case of Osborn v. Bank of U. S., 9 Wheat. 738, this question was brought more directly before the court. It was argued with equal zeal and talent, and was decided on great deliberation. In that case the auditor and treasurer of the state were defendants, and the title of the state itself to the subject in contest was asserted. In that case the court said: 'It may, we think, be laid down as a rule, which admits of no exception, that, in all cases where the jurisdiction depends on the party, it is the party named on the record.' The court added: 'The state not being a party on the record, and the court having jurisdiction over those who are parties on the record, the true question is not one of jurisdiction, but whether, in the exercise of its jurisdiction, the court ought to make a decree against the defendants; whether they are to be considered as having a real interest or as being only nominal parties.' "

In the case of Bank v. Wister, 2 Pet. 319, the jurisdiction of the court was questioned on the ground that the state of Kentucky was the sole proprietor of the stock of the bank, for which reason it was insisted that the suit was virtually against the state. This conten-tion was denied, the court saying that the question was no longer an open one; that the case of U. S. Bank v. Planter's Bank of Geor-gia, 9 Wheat. 904, was a much stronger one for the defendant than the present case, for there the state of Georgia was not only a pro-prietor, but a corporator.

In the case of Charles River Bridge v. Warren Bridge, 11 Pet. 419, 571, 585, which was a suit by the former to enjoin the latter from erecting a bridge across Charles river, the jurisdiction of the court was challenged on the ground that the suit was brought to invalidate a charter granted by the state of Massachusetts, and it was insisted that the state was the substantial party, though not named on the record, and that the defendants who were named on the record were the agents of the state, and acting under its authority. It was urged that, if jurisdiction was asserted by the court, they would do indirectly what the constitution prohibited them from doing directly. The court (Mr. Justice McLean delivering the opinion) overruled this claim, and asserted the jurisdiction of the court. Mr. Justice Story, with whom Mr. Justice Thompson concurred, while dissenting upon other questions, agreed with the court in asserting its jurisdiction. He declared that "it is no objection to the jurisdiction of the circuit courts of the United States that the defendant is a servant or agent of the state, and the act complained of done under its authority, if it be tortious and unconstitutional."

. In the case of Railroad Co. v. Letson, 2 How. 497, 551, which was an action of covenant by the latter against the former, the jurisdiction of the court was questioned on the ground that the state of South Carolina was a member of the corporation, and that the action directly and necessarily affected the interests of a sovereign state. The jurisdiction was asserted, the court saying the true principle is that the jurisdiction of the circuit courts of the United States cannot be denied or taken away on account of a state having an interest in a suit, unless the state is a party on the record. It was added:

"This must be the rule under our system, whether the jurisdiction of the court is denied on account of any interest which a state may have in the subject-matter of the suit, or when it is alleged that jurisdiction does not exist on account of the character of the parties."

The case of Davis v. Gray, 16 Wall. 203, 220, was a suit by the receiver of an insolvent railroad company to which a large grant of land had been made by the state of Texas, seeking to enjoin the officers of the state, who had declared the lands forfeited, from granting them to other persons. The jurisdiction of the court was assailed on the ground that the land in question had been forfeited to the state, and that the officers who were named on the record as defendants represented the state, and had no personal interest in the subject-matter, in which the state alone was concerned. The court, reviewing many earlier cases, asserted its jurisdiction, and declared that three things, among others, were settled in the case of Osborn v. Bank, 9 Wheat. 738:

"(1) A circuit court of the United States in a proper case in equity may enjoin a state officer from executing a state law in conflict with the constitution or a statute of the United States when such execution will violate the rights of the complainant. (2) Where the state is concerned, the state should be made a party, if it can be done. That it cannot be done is a sufficient reason for the omission to do it, and the court may proceed to decree against the officers of the state in all respects as if the state were a party to the record (3) In deciding who are parties to the suit, the court will not look beyond the record. Making a state officer a party does not make the state a party, although her law may have prompted his action, and the state may stand behind him as the real party in interest."

The case of Board v. McComb, 92 U. S. 531, 541, was a suit for a perpetual injunction to restrain the board of liquidation of the state of Louisiana from using the bonds, known as the "consolidated bonds" of the state, for the liquidation of a certain debt claimed to be due from the state to the Louisiana Levee Company, and from using any other state bonds in payment of the pretended debt. The jurisdiction of the court was questioned on the ground that the suit against the officers of the state was one in effect against the state, which alone was interested in the subject-matter. The unanimous opinion of the court was delivered by Mr. Justice Bradley, who observed that on this branch of the subject numerous and well-considered cases decided by the court left little to be said. He observed that the objections to proceeding against state officers by mandamus or injunction were: First, that it was in effect proceeding against the state itself; and secondly, that it interfered with the official discretion vested in the officers. He said it was conceded that neither of these things could be done. He further added:

"A state, without its consent, cannot be sued by an individual, and a court cannot substitute its own discretion for that of the executive officers in matters belonging to the proper jurisdiction of the latter. But it has been well settled that when a plain official duty, requiring no exercise of discretion, is to be performed, and performance is refused, any person who will sustain personal injury by such refusal may have a mandamus to compel its performance; and, when such duty is threatened to be violated by some positive official act, any person who will sustain personal injury thereby for which adequate compensation cannot be had at law may have an injunction to prevent it. In such cases the writs of mandamus and injunction are somewhat correlative to each other. In either case, if the officer plead the authority of an unconstitutional law for the nonperformance or violation of his duty, it will not prevent the issuing of the writ. An unconstitutional law will be treated by the courts as null and void."

The case of U. S. v. Lee, 1 Sup. Ct. 240,[1] was an action involving the title to Arlington Heights, where a national cemetery is located, in which were buried the bodies of many deceased Union soldiers. The action was brought against Kaufman and Strong, who, as agents of the United States, were in possession of the premises. The great question for decision was whether an action for the recovery of land claimed to belong to the United States could be maintained against the agents of the United States who were in possession of it under their authority. Few cases have ever more deeply touched the public feelings. It was argued with zeal and ability, and was decided on great deliberation. The opinion of the court was delivered by Mr. Justice Miller, whose judgments on questions of constitutional law are scarcely inferior in clearness of statement and power of argument to the luminous judgments of Chief Justice Marshall. The court held that the courts of the United States had jurisdiction in such cases, although the United States was the only party interested in the subject-matter.

The case of Louisiana v. Jumel, 107 U. S. 711, 2 Sup. Ct. 128, was a suit in equity by certain owners of a portion of the consolidated bonds of the state of Louisiana for a mandatory injunction to compel the state board of liquidation of the state, consisting of the governor, the lieutenant governor, the auditor, the treasurer, the secretary of state, the speaker of the house of representatives, and the State National Bank of Louisiana, as fiscal agent of the state, to apply any and all moneys and proceeds of taxes in their hands or subject to their control to the payment and retirement of their bonds, as provided for in a certain act of the legislature. A majority of the court (Mr. Chief Justice Waite pronouncing the opinion) held that the circuit court of the United States was without jurisdiction. The judgment was placed upon the ground that the courts of the United States could not compel these officers to withdraw or divert funds from the state treasury, and apply them to the payment of the bonds. The court asserted that there was a distinction between such a case as the one then before it and those cases where the jurisdiction of the courts of the United States had been upheld to prevent an officer of the state from doing a tortious or wrongful act to the injury of an individual, where such tortious or wrongful act was done or threatened under

---

[1] 106 U. S. 196.

the pretended authority of an unconstitutional act of the state legislature. The dissenting judges were of the opinion that the case fell within the principles adjudged in former decisions of the court. What was sought in this case was to procure a decree negatively to restrain the members of the state board of liquidation from acting pursuant to an unconstitutional law, and affirmatively to compel them to apply the funds of the state to the payment of the bonds in pursuance of a constitutional enactment. It was said by the court that there was nothing in any of the cases formerly decided by it which authorized any such relief as was there asked.

The case of Cunningham v. Railroad Co., 109 U. S. 446, 3 Sup. Ct. 292, 609, was one in which it was held that the relief sought was affirmative in character, and, if granted, the decree would operate directly upon the property rights of the state. The jurisdiction of the court was therefore denied. The court, however, cited and expressly approved the rule announced by Mr. Justice Bradley in the case of Board v. McComb, supra.

The case of Poindexter v. Greenhow (one of the Virginia Coupon Cases) 114 U. S. 270, 5 Sup. Ct. 903, 962, was an action of detinue for the recovery of personal property distrained by the defendant as tax collector of the city of Richmond, Va., for delinquent taxes, in payment of which the plaintiff had duly tendered coupons cut from bonds issued by the state under the funding act of March 30, 1871, by which such coupons were made receivable in payment of taxes. A later statute required all taxes to be paid in lawful money, and, in obedience to it, the collector refused to receive the coupons. The court held that the plaintiff had paid the taxes demanded of him by a lawful tender, and that the defendant had no authority of law thereafter to attempt to enforce other payment by seizing his property. It was objected, however, that the suit of the plaintiff could not be maintained, because it was substantially an action against the state of Virginia to which it had not assented. It was said that the tax collector, who was sued, was an officer and agent of the state, engaged in collecting its revenue, under a valid law, and that the tax he sought to collect from the plaintiff was lawfully due; that consequently, he was guilty of no personal wrong, but acted only in an official capacity, representing the state, and, in refusing to receive the coupons tendered, simply obeyed the commands of his principal, whom he was lawfully bound to obey; and that, if any wrong had been done, it was done by the state in refusing to perform its contract, and for that wrong the state alone was liable, but was exempted from suit by the eleventh amendment to the constitution of the United States, which declares that "the judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The court, however, overruled these objections, and maintained the jurisdiction of the court in an exhaustive opinion. The opinion was placed upon the ground that the suit was not in substance or effect a suit against the state.

The opinion of the dissenting judges in Marye v. Parsons (one of the Virginia Coupon Cases) 114 U. S. 335, 336, 5 Sup. Ct. 932, 962, fully sustains the jurisdiction of the court in the case now on hearing. They there say:

"But, then, it will be asked, has a citizen no redress against the unconstitutional acts or laws of the state? Certainly he has. There is no difficulty on the subject. Whenever his life, liberty, or property is threatened, assailed, or invaded by unconstitutional acts, or by an attempt to execute unconstitutional laws, he may defend himself in every proper way, by habeas corpus, by defense to prosecutions, by actions brought on his own behalf, by injunction or mandamus. Any one of these modes of redress, suitable to his case, is open to him. A citizen cannot in any way be harassed, injured, or destroyed by unconstitutional laws without having some legal means of resistance or redress. But this is where the state or its officers moves against him. The right to all these means of protection and redress against unconstitutional oppression and exaction is a very different thing from the right to coerce the state into a fulfillment of its contracts."

The case of Hagood v. Southern, 117 U. S. 52, 6 Sup. Ct. 608, involves the same jurisdictional questions as those raised and decided in the case of Louisiana v. Jumel, supra, the doctrine of which is affirmed and applied. It is held that when a suit is brought in a court of the United States against officers of a state to enforce performance of a contract made by the state, and the controversy is as to the validity and obligation of the contract, and the only remedy sought is the enforcement of the contract made by the state, and the nominal defendants have no personal interest in the subject-matter, but defend only as representing the state, the state is to be deemed the real party against whom the relief is sought, and the suit is substantially within the prohibition of the eleventh amendment to the constitution. The court further pointed out the distinction between cases in which the relief sought was the performance of a plain official duty requiring no exercise of discretion, or where state officers have invaded, or threaten to invade, personal or property rights, and cases like the one before it, in which the relief sought was affirmative official action by state officers in performing an obligation which attached to the state in its political capacity. It was observed that the courts of the United States may take cognizance of cases of the two former classes, but may not of the latter.

The case of In re Ayres, 123 U. S. 443, 8 Sup. Ct. 164, was one where a bill in equity had been filed by aliens against the auditor of the state of Virginia, its attorney general, and various commonwealth attorneys for its counties, seeking to enjoin them from bringing and prosecuting suits in the name and for the use of the state, under the act of its general assembly of May 12, 1887, against taxpayers reported to be delinquent, but who had tendered in payment of the taxes sought to be recovered in such suits tax-receivable coupons cut from bonds of the state. An injunction having been awarded, according to the prayer of the bill, proceedings were taken against the attorney general and two commonwealth attorneys for contempt in disobeying the orders of the court in that respect, and they were fined and committed until the fines should be paid and they should

purge themselves of their contempt by dismissing certain suits. They sued out writs of habeas corpus, and, after a hearing in the supreme court, they were discharged. It was held that the suit was one against the state of Virginia, within the true meaning of the eleventh amendment to the constitution, and was not within the jurisdiction of the courts of the United States; that the injunction granted by the circuit court was null and void; and that the imprisonment of the officers of the state for an alleged contempt of the authority of the court was illegal. The decision in this case conflicts with the case of Osborn v. Bank, 9 Wheat. 738, and many former decisions of the court, in denying the doctrine announced by Mr. Chief Justice Marshall that "it may, we think, be laid down as a rule, which admits of no exception, that, in all cases where jurisdiction depends on the party, it is the party named on the record." The principle declared in this case is that the court will look beyond the parties on the record to the facts disclosed by the bill, and, if it appears therefrom that the relief sought is in effect an affirmative remedy, the practical effect of which is to enforce the performance of a contract by the state, the courts of the United States will be held to be without jurisdiction. The court conceded that rights of person and property, other than contract rights, when invaded or threatened with invasion by an officer of the state under the pretended authority of an unconstitutional statute, might be protected by the courts of the United States by a writ of injunction restraining the commission of the tortious or wrongful act. The officer, when sued for a tortious or wrongful act done or threatened to be done, cannot shield himself behind an unconstitutional enactment. He cannot claim to be acting as a representative of the state except in regard to those acts which are performed under warrant of lawful authority from the state.

The case of Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. 699, was a suit in equity against the members of the board of land commissioners of the state of Oregon brought by a purchaser of swamp and overflowed lands, under an act of the state legislature of October 26, 1870, in order to restrain the defendants from doing acts which the bill alleged were violative of the plaintiff's contract with the state when he purchased the lands, and which were unconstitutional and destructive of his rights and privileges, and which, it was alleged, would work irreparable damage to his property rights so acquired. On February 16, 1887, the legislature of the state passed an act declaring all certificates of sale of swamp or overflowed lands void on which 20 per cent. of the purchase price was not paid prior to January 17, 1879, and requiring the board of commissioners to cancel such certificates. The board of commissioners, acting under the authority of the act of February 16, 1887, was threatening and about to cancel the plaintiff's certificate of purchase, and he filed his bill in equity in the circuit court of the United States for the district of Oregon to restrain them from so doing. The bill was demurred to by the defendants, on the ground that the suit was practically a suit against the state of Oregon, and that the court was denied jurisdiction by the eleventh amendment to the constitution of the

United States. The demurrer was overruled, and the jurisdiction of the court asserted. From a final decree, enjoining the members of the board of commissioners as prayed, an appeal was taken to the supreme court, where the case was elaborately argued, and the decree of the court below was affirmed in an exhaustive opinion delivered by Mr. Justice Lamar. In this case the officers of the state, acting in pursuance of an unconstitutional act of the state legislature, were doing and threatening to do acts which were viola tive of the contract rights of the plaintiff. While the decree was negative in form, restraining the defendants from violating the con tract rights of the plaintiff, in effect it operated to establish his con tract rights to the land against the state. The court, classifying suits against officers of the state, observed:

"The first class is where the suit is brought against the officers of the state, as representing the state's action and liability, thus making it, though not a party to the record, the real party against which the judgment will so operate as to compel it to specifically perform its contracts. In re Ayres, 123 U. S. 443, 8 Sup. Ct. 164; Louisiana v. Jumel, 107 U. S. 711, 2 Sup. Ct. 128; Antoni v. Greenhow, 107 U. S. 769, 2 Sup. Ct. 91; Cunningham v. Railroad Co., 109 U. S. 446, 3 Sup. Ct. 292, 609; Hagood v. Southern, 117 U. S. 52, 6 Sup. Ct. 608. [In this class of cases the courts of the United States are without juris diction.] The other class is where a suit is brought against defendants who claim to act as officers of the state, and, under the color of an unconstitu tional statute, commit acts of wrong and injury to the rights and property of the plaintiff acquired under contract with the state. Such suit, whether brought to recover money or property in the hands of such defendants, unlawfully taken by them in behalf of the state, or for compensation in damages, or in a proper case, where the remedy at law is inadequate, for an injunction to pre vent such wrong and injury, or for a mandamus, in a like case, to enforce upon the defendant the performance of a plain, legal duty, purely ministerial, is not, within the meaning of the eleventh amendment, an action against the state. Osborn v. Bank, 9 Wheat. 738; Davis v. Gray, 16 Wall. 203; Tomlin son v. Branch, 15 Wall. 460; Litchfield v. Webster Co., 101 U. S. 773; Allen v. Railroad Co., 114 U. S. 311, 5 Sup. Ct. 925, 962; Board v. McComb, 92 U. S. 531; Poindexter v. Greenhow, 114 U. S. 270, 5 Sup. Ct. 903, 962."

The case of In re Tyler, 149 U. S. 164, 13 Sup. Ct. 785, was a petition for a writ of habeas corpus by Tyler, sheriff of Aiken county, S. C., representing that he was unjustly detained by the United States marshal for the district of South Carolina. One Chamber lain had been appointed receiver of the South Carolina Railroad Company by the order of the circuit court of the United States for the district of South Carolina, and had filed a bill in equity as such receiver against a number of county treasurers and sheriffs of South Carolina, including the petitioner, alleging that they were about to levy upon and seize the property of the railroad company for taxes which were alleged to be unconstitutional and illegal for several reasons specifically alleged, and praying for an injunction, which was granted. The petitioner was fined and committed for contempt in violating the injunction. It was insisted by counsel for the pe titioner that the injunction was illegal and void, as it practically operated against the state, and prevented it from collecting the taxes due to it, and on the ground that the officer simply represented and acted in behalf of the state in attempting to collect the taxes by seizure and sale of the property of the railroad company. The court

denied the writ, and asserted the jurisdiction of the court in an elaborate opinion by the present chief justice. After an extended review of the case, the court say:

"And while it was conceded that the principle stated by Chief Justice Marshall in the leading case of Osborn v. Bank, 9 Wheat. 738, that, 'in all cases where jurisdiction depends on the party, it is the party named on the record,' and that 'the eleventh amendment is limited to those suits in which the state is a party to the record,' had been qualified to a certain degree in some of the subsequent decisions of this court, yet it was also rightly declared that the general doctrine there announced, that the circuit courts of the United States will restrain a state officer from executing an unconstitutional statute of the state when to execute it would be to violate rights and privileges of the complainant that had been guarantied by the constitution, and would do irreparable damage and injury to him, has never been departed from."

The case of Reagan v. Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, was a suit in equity in a circuit court of the United States by a citizen of the state of New York against the members of the state board of railroad commissioners of the state of Texas to restrain the enforcement of certain rates for the transportation of freight and passengers over the railroads of the state, which rates had been established by such commission under an act of the legislature of the state on the ground that the rates so established were unreasonable and unjust. It was held to be within the power of the court to decree that the rates so established were unreasonable and unjust, and to restrain their enforcement.

From this review, it will be seen that while there has not always been harmony in the views of the judges, nor in the decisions of the court, touching the true meaning of the eleventh amendment, it has never been doubted or denied since the decision in the case of Osborn v. Bank, supra, that the circuit courts of the United States were invested with jurisdiction and power to restrain an officer of the state from committing tortious or wrongful acts, violative of the personal or property rights of a party, where such acts are committed or threatened to be committed under and pursuant to the pretended authority of an unconstitutional statute.

The defendant in this case is alleged to be about to commit an act, under and pursuant to a statute alleged to be unconstitutional, which, if committed, would, wrongfully and to its irreparable injury, create an apparent charge and lien upon the complainant's property, in violation of its right to security of property guarantied to it by the constitution. In doing such act the defendant would not be acting for and in behalf of the state, for the reason that the state has not by any valid statute given him authority to perform the act. While he is generally and for all lawful purposes an officer of the state, he ceases to act as the representative of the state whenever he does or attempts to do an act for the doing of which a lawful authority has not been granted by a valid statute. The court, therefore, has jurisdiction of the present case, and must determine the other questions presented by the motion and demurrer to the bill.

The first question raised and argued by counsel for the complainant is that the act of March 6, 1893, under the provisions of which

the valuation and assessment of its property for the purposes of taxation were made, never became a law of the state, for the reason, as shown by the journals of the senate and house of representatives, that the bill was passed by the legislature and sent to the governor within the two days next preceding the final adjournment of the general assembly as fixed by the constitution, in violation of section 14, art. 5, of the said instrument.

This exact question was presented in the case of W. U. Tel. Co. v. Taggart, 40 N. E. 1051, decided on May 14, 1895, by the supreme court of the state of Indiana. The bill in that case was in substance and scope the same as the bill in this court, and the act in question was assailed upon the same grounds as those presented and argued before me. The validity of the same acts of the state board of tax commissioners was drawn in question in both courts. After an extended review of the authorities, the court held that the statute in question was valid. It was said:

"The authentication of the act, in the manner provided in section 25, art. 4, of the constitution (that 'all bills and joint resolutions so passed shall be signed by the presiding officers of the respective houses'), is conclusive evidence that the act was duly passed in conformity with the provisions of the organic law of the state. Under the guaranty of the constitution, the statute, enrolled and filed in the office of the secretary of state, comes to us as by the solemn authentication of the legislature itself, under the hand and seal of its presiding officers. Such authentication imports absolute verity as to the passage of the act, even as in the case of the acts of the court, which are authenticated by its certificate and seal under the hand of its clerk."

This decision conclusively settles, so far as the courts of the United States are concerned, that the act in question was constitutionally enacted.

It was further insisted in that case, as it is in this, that the act[1] in question was invalid—First, because it fails to provide due process of law; secondly, because it denies to the complainant the equal protection of the law; thirdly, because it violates the provisions of the constitution of the United States which prohibit any state from laying any imposts or duties on imports or exports; fourthly, because it is in violation of the provisions of the state constitution which require a uniform and equal rate of taxation; fifthly, because it is in violation of the constitution of the United States, in that it amounts to a regulation of commerce among the states and with foreign countries; sixthly, it is in violation of the constitution of the state, as being in effect a local or special law; and, seventhly, it is in violation of the constitution of the state as conferring judicial powers upon executive and administrative officers. These several objections were carefully examined by the court, and were held to be unfounded. This act is adjudged by the highest judicial tribunal of the state to have been validly enacted, and not to be obnoxious to any constitutional provision. The courts of the United States are bound to accept the statute in question as a binding and constitutional enactment of the state, unless it is invalidated by reason of its conflict with some

---

[1] For the act of March 6, 1893, see note at end of case.

provision of the constitution of the United States. Its alleged repugnancy to the constitution of the United States was considered with great care in the case of W. U. Tel. Co. v. Taggart, supra, and it was there held that no such repugnancy existed. This conclusion is fully supported by the following decisions of the supreme court of the United States: Railway Co. v. Backus, 154 U. S. 421, 14 Sup Ct. 1114; W. U. Tel. Co. v. Massachusetts, 125 U. S. 530, 8 Sup. Ct. 961; Pullman's Palace Car Co. v. Pennsylvania, 141 U. S. 18, 11 Sup. Ct.876; Maine v. Grand Trunk Ry. Co., 142 U. S. 217, 12 Sup. Ct. 121, 163; Railroad Co. v. Gibbes, 142 U. S. 386, 12 Sup. Ct. 255; Railway Co. v. Wright, 151 U. S. 470, 14 Sup. Ct. 396.

It is lastly insisted that the state board of tax commissioners adopted a rule of valuation, the necessary result of which was to fix the valuation on complainant's property higher than that fixed upon other property in the state. This claim is equally unfounded. The valuation of its property was fixed upon a mileage basis which has been sustained by the supreme court in the cases above cited.

The bill of complaint is insufficient to entitle the complainant to the relief prayed for. The motion to dissolve the temporary restraining order is therefore sustained, and the bill is dismissed for want of equity, at the costs of the complainant.

#### NOTE.

An act supplementary to and amendatory of an act entitled "An act concerning taxation, repealing all laws in conflict therewith, and declaring an emergency," approved March 6, 1891, and providing for the taxation of telegraph, telephone, palace car, sleeping car, drawing-room car, dining car, express and fast freight, joint stock associations, companies, copartnerships and corporations transacting business in the state of Indiana, repealing sections 68, 69, 70 and 71 of said act and all laws in conflict therewith, and declaring an emergency."

#### (Approved March 6, 1893.)

Section 1. Be it enacted by the general assembly of the state of Indiana, that any joint stock association, company, copartnership or corporation, whether incorporated under the laws of this state or any other state, or of any foreign nation, engaged in transmitting to, from, through, in or across the state of Indiana, telegraphic messages, shall be deemed and held to be a telegraph company, and every such telegraph company shall, annually, between the first day of April and the first day of June, make out and deliver to the auditor of state a statement, verified by the oath of the officer or agent of such company making such statement, with reference to the first day of April next preceding, showing: First. The total capital stock of such association, company, copartnership or corporation. Second. The number of shares of capital stock issued and outstanding, and the par or face value of each share. Third. Its principal place of business. Fourth. The market value of said shares of stock on the first day of April next preceding, and if such shares have no market value, then the actual value thereof. Fifth. The real estate, structures, machinery, fixtures and appliances owned by said association, company, copartnership or corporation, and subject to local taxation within the state, and the location and assessed value thereof, in each county or township where the same is assessed for local taxation. Sixth. The specific real estate, together with the permanent improvements thereon, owned by such association, company, copartnership or corporation, situate outside the state of Indiana, and not directly used in the conduct of the business, with a specific description of each such piece, where located, the purpose for which the same is used and

the sum at which the same is assessed for taxation in the locality where situated. Seventh. All mortgages upon the whole or any of its property, together with the dates and amounts thereof. Eighth. (a) The total length of the lines of said association or company. (b) The total length of so much of their lines as is outside the state of Indiana. (c) The length of the lines within each of the counties and townships within the state of Indiana.

Sec. 2. Every telephone company doing business in this state, whether incorporated under the laws of this state, or of any other state, or of any foreign nation, shall annually, between the first day of April and the first day of June, make out and deliver to the auditor of state a statement, verified by the oath of the officer or agent of such company making such statement, with reference to the first day of April next preceding, showing: First. The total capital stock of such association. company, copartnership or corporation. Second. The number of shares of capital stock issued and outstanding and the par or face value of each share. Third. Its principal place of business. Fourth. The market value of said shares of stock on the first day of April next preceding, and if such shares have no market value, then the actual value thereof. Fifth. The real estate, structures, machinery, fixtures and appliances owned by said association, company, copartnership or corporation, and subject to local taxation within the state, and the location and assessed value thereof in each county or township where the same is assessed for local taxation. Sixth. The specific real estate, together with the permanent improvements thereon, owned by such association. company, copartnership or corporation, situate outside the state of Indiana and not used directly in the conduct of the business, with a specific description of each such piece, where located, the purpose for which the same is used, and the sum at which the same is assessed for taxation in the locality where situated. Seventh. All mortgages upon the whole or any of its property together with the dates and amounts thereof. Eighth. (a) The total length of the lines of said association or company. (b) The total length of so much of their lines as is outside the state of Indiana. (c) The length of the lines within each of the counties and townships within the state of Indiana.

Sec. 3. Every joint stock association, company, copartnership or corporation incorporated or acting under the laws of this or any other state, or any foreign nation engaged in conveying to, from, through, in or across this state, or any part thereof. money, packages, gold, silver, plate, merchandise, freight, or other articles, under any contract, express or implied, with any railroad company, or the managers, lessees, agents or receivers thereof, provided such joint stock association, company, copartnership or corporation is not a railroad company, shall be deemed and held to be an express company within the meaning of this act, and every such express company shall annually, between the first day of April and the first day of June, make out and deliver to the auditor of state a statement, verified by the oath of the officer or agent of such association, company. copartnership or corporation making such statement with reference to the first day of April next preceding, showing: First. The total capital stock or capital of said association, company, copartnership or corporation. Second. The number of shares of capital stock issued and outstanding and the par or face value of each share, and, in case no shares of capital stock are issued, in what manner the capital thereof is divided and in what manner such holdings are evidenced. Third. Its principal place of business. Fourth. The market value of the said shares of stock on the first day of April next preceding, and if such shares have no market value, then the actual value thereof; and in case no shares of stock have been issued, state the market value, or the actual value in case there is no market value, of the capital thereof, and the manner in which the same is divided. Fifth. The real estate, structures, machinery, fixtures and appliances owned by said association, company, copartnership or corporation, and subject to local taxation within the state of Indiana, and the location and assessed value thereof in each county or township where the same is assessed for local taxation. Sixth. The specific real estate, together with the improvements thereon, owned by said association, company. copartnership or corporation, situate outside the state of Indiana and not used directly in the conduct of the business, with a specific description of each piece, where located, the purpose for which the same is used, and the sum at

which the same is assessed for taxation in the locality where situated. Seventh. All mortgages upon the whole or any part of its property, together with the dates and amounts thereof. Eighth. (a) The total length of the lines or routes over which such association, company, copartnership or corporation transports such merchandise, freight or express matter. (b) The total length of such lines or routes as are outside the state of Indiana. (c) The length of such lines or routes within each of the counties and townships within the state of Indiana.

Sec. 4. Every joint stock association, company, copartnership or corporation incorporated or acting under the laws of this or any other state, or of any foreign nation, and conveying to, from, through, in or across this state, or any part thereof, passengers or travelers in palace cars, drawing-room cars, sleeping cars, dining cars or chair cars, under any contract, express or implied, with any railroad company, or the managers, lessees, agents or receivers thereof, shall be deemed and held to be a sleeping-car company for the purposes of this act; and every such sleeping-car company doing business in this state shall, annually, between the first day of April and the first day of June, make out and deliver to the auditor of state a statement verified by the oath of the officer or agent of such company making such statement, with reference to the first day of April next preceding, showing: First. The total capital stock of such association, company, copartnership or corporation. Second. The number of shares of capital stock issued and outstanding, and the par or face value of each share. Third. Its principal place of business. Fourth. The market value of said shares of stock on the first day of April next preceding, and if such shares have no market value, then the actual value thereof. Fifth. The real estate, structures, machinery, fixtures and appliances owned by said association, company, copartnership or corporation, and subject to local taxation within the state, and the location and assessed value thereof in each county or township where the same is assessed for local taxation. Sixth. The specified real estate, together with the permanent improvements thereon, owned by such association, company, copartnership or corporation, situate outside the state of Indiana, and not used directly in the conduct of the business, with a specific description of each such piece, where located, the purpose for which the same is used, and the sum at which the same is assessed for taxation in the locality where situated. Seventh. All mortgages upon the whole or any of its property, together with the franchises and amounts thereof. Eighth. (a) The total length of the main lines of all the railroad companies over which said cars are run. (b) The total length of so much of the main lines of the railroad companies over which said cars are run as is outside the state of Indiana. (c) The length of the lines of said railroad companies over which said cars are run within each of the counties and townships within the state of Indiana: provided, that where the railroads, over which said lines run, have double tracks, or a greater number of tracks than a single track, the statement shall only give the mileage as though such tracks were but a single track, and in case the auditor of state shall require it, such statement shall show in detail the number of miles of each or any particular railroad system or division.

Sec. 5. Upon the filing of such statements the auditor of state shall examine them, and each of them, and if he shall deem the same insufficient, or in case he shall deem that other information is requisite, he shall require such officer to make such other and further statements as said auditor of state may call for. In case of the failure or refusal of any association, company, copartnership or corporation to make out and deliver to the auditor of state any statement or statements required by this act, such association, company, copartnership or corporation shall forfeit and pay to the state of Indiana one hundred ($100) dollars for each additional day such report is delayed beyond the first day of June, to be sued and recovered in any proper form of action in the name of the state of Indiana on the relation of the auditor of state, and such penalty, when collected, shall be paid into the general fund of the state.

Sec. 6. Upon the meeting of the state board of tax commissioners for the purpose of assessing railroad and other property, said auditor of state shall lay such statements, with such information as may have been furnished him, before said board of tax commissioners, who shall thereupon value and assess the property of each association, company, copartnership or corporation in the

manner hereinafter set forth, after examining such statements and after ascertaining the value of such properties therefrom, and from such other information as they may have or obtain. For that purpose they may require the agents or officers of said association, company, copartnership or corporation to appear before them with such books, papers or statements as they may require, or they may require additional statements to be made to them, and may compel the attendance of witnesses, in case they shall deem it necessary, to enable them to ascertain the true cash value of such property.

Sec. 7. Said state board of tax commissioners shall first ascertain the true cash value of the entire property owned by said association, company, copartnership or corporation from said statements or otherwise, for that purpose taking the aggregate value of all the shares of capital stock, in case said shares have a market value, and in case they have none, taking the actual value thereof or of the capital of said association, company, copartnership or corporation, in whatever manner the same is divided, in case no shares of capital stock have been issued: provided, however, that in case the whole or any portion of the property of such association, company, copartnership or corporation shall be incumbered by a mortgage or mortgages, such board shall ascertain the true cash value of such property by adding to the market value of the aggregate shares of stock or to the value of the capital, in case there shall be no such shares, the aggregate amounts of such mortgage or mortgages, and the result shall be deemed and treated as the true cash value of the property of such association, company, copartnership or corporation. Such board of tax commissioners shall, for the purpose of ascertaining the true cash value of the property within the state of Indiana, next ascertain from such statements or otherwise, the assessed value for taxation, in the localities where the same is situated, of the several pieces of real estate situate without the state of Indiana and not specifically used in the general business of such associations, companies, copartnerships or corporations, which said assessed values for taxation shall be by said board deducted from the gross value of the property as above ascertained. Said state board of tax commissioners shall next ascertain and assess the true cash value of the property of such associations, companies, copartnerships or corporations within the state of Indiana, by taking the proportion of the whole aggregate value of said associations, companies, copartnerships or corporations, as above ascertained, after deducting the assessed value of such real estate without the state, which the length of the lines of said associations, companies, copartnerships or corporations, in the case of telegraph and telephone companies, within the state of Indiana, bears to the total length of the lines thereof; and in the case of palace, drawing-room, sleeping, dining or chair car companies, the proportion shall be the proportion of such aggregate value, after such deductions, which the length of the lines within the state, over which said cars are run, bears to the length of the whole lines over which said cars are run; and in the case of express companies, the proportion shall be the proportion of the whole aggregate value, after such deductions, which the length of the lines or routes, within the state of Indiana, bears to the whole length of the lines or routes of such associations, companies, copartnerships or corporations, and such amount, so ascertained, shall be deemed and held as the entire value of the property of said associations, companies, copartnerships or corporations within the state of Indiana. From the entire value of the property within the state so ascertained, there shall be deducted, by said board, the assessed value for taxation of all the real estate, structures, machinery and appliances within the state and subject to local taxation in the counties and townships, as hereinbefore described in item No. 5 of sections 1, 2, 3, and 4 of this act, and the residue of such value so ascertained, after deducting therefrom the assessed value of such local properties, shall be by said board assessed to said association.

Sec. 8. Said board of tax commissioners shall thereupon ascertain the value per mile of the property within the state by dividing the total value, as above ascertained, after deducting the specific properties locally assessed within the state by the number of miles within the state, and the result shall be deemed and held as the value per mile of the property of such association, company, copartnership or corporation within the state of Indiana.

Sec. 9. Said board of tax commissioners shall thereupon for the purpose of

determining what amount shall be assessed by it to said association, company, copartnership or corporation in each county in the state, through, across, into or over which the line of said association, company, copartnership or corporation extends, multiply the value per mile as above ascertained by the number of miles in each of such counties as reported in said statements, or as otherwise ascertained, and the result thereof shall be by said board certified to the auditor of state, who shall thereupon certify the same to the auditors respectively of the several counties through, into, over or across which the lines or routes of said association, company, copartnership or corporation extend, and such auditors shall apportion the amount certified for their counties respectively among the several townships into, through, over or across which such lines or routes extend in proportion to the length of the lines in such townships.

Sec. 10. To enable said county auditors to properly apportion the assessments between the several townships, they are authorized to require the agent of said association or company to report to them respectively, under oath, the length of the lines in each township, and the auditor shall thereupon add to the value so apportioned the assessed valuation of the real estate, structures, machinery, fixtures and appliances situated in any township, and extend the taxes thereon upon the duplicate, as in other cases.

Sec. 11. In case any such association, copartnership or corporation as named in this supplemental and amendatory act shall fail or refuse to pay any taxes assessed against it in any county or township in the state, in addition to other remedies provided by law for the collection of taxes, an action may be prosecuted in the name of the state of Indiana by the prosecuting attorneys of the different judicial circuits of the state, on the relation of the auditors of the different counties of this state, and the judgment in said action shall include a penalty of fifty per cent. of the amount of taxes so assessed and unpaid, together with reasonable attorney's fees for the prosecution of such action, which action may be prosecuted in any county into, through, over or across which the line or route of any such association, copartnership, company or corporation shall extend, or any county where such association, company, copartnership or corporation, shall have an office or agent for the transaction of business. In case such association, company, copartnership or corporation shall have refused to pay the whole of the taxes assessed against the same by said state board of tax commissioners, or in case such association, company, copartnership or corporation shall have refused to pay the taxes or any portion thereof assessed to it in any particular county or counties, township or townships, such action may include the whole or any portion of the taxes so unpaid in any county or counties, township or townships, but the attorney-general may, at his option, unite in one action the entire amount of the tax due, or may bring separate actions in each separate county or township, or join counties and townships, as he may prefer. All collection of taxes for or on account of any particular county made in any such suit or suits, shall be by said auditor of state accounted for as a credit to the respective counties for or on account of which such collections were made by said auditor of state, at the next ensuing settlement with such county, but the penalty so collected shall be credited to the general fund of the state; and upon such settlement being made, the treasurers of the several counties shall, at their next settlements, enter credits upon the proper duplicates in their offices, and at the next settlement with such county report the amount so received by him in his settlement with the state, and proper entries shall be made with reference thereto: provided, however, that in any such action the amount of the assessment fixed by said state board of tax commissioners and apportioned to such county, or apportioned by the county auditor to any particular township, shall not be controverted.

Sec. 12. Inasmuch as the provisions of this act are intended to take the place of sections 68, 69, 70 and 71 of the act entitled "An act concerning taxation, repealing all laws in conflict therewith and declaring an emergency," approved March 6, 1891, such sections and each of them and all other laws and parts of laws in conflict with this act are hereby repealed: provided, that all moneys now due the state, or which may become due on the 1st day of April, 1893, or at any other time, on account of any assessment or charge made

against any of the joint stock associations, persons, companies or corporations on account of per cent. on gross or net earnings for the preceding year or years, and all penalties and charges thereon growing out of any failure to make reports on payments as now required by the provisions of the aforesaid repealed sections shall be paid and collected under the provisions of said repealed sections the same as if said sections were not repealed, and any suit brought for the recovery of such money, taxes or penalties shall be begun under the provisions of said repealed sections and prosecuted to final judgment thereunder in all respects the same as if said sections were continued in full force; and it is hereby expressly provided that all the rights of the state accrued, or which may accrue on the 1st day of April, 1893, on account of receipts for the preceding years, are hereby saved from the operation of the aforesaid repealing clause.

Sec. 13. Whereas an emergency exists for the immediate taking effect of this act, the same shall be in force from and after its passage.