## WESTERN UNION TELEGRAPH CO. v. THE STATE.

[No. 17,831.   Filed October 2, 1896.]

PLEADING.—*Answer Out of Record is not Brought in by Mere Reference Thereto in a Subsequent Pleading.* — An original answer which has been taken out of the record, by the court sustaining a demurrer thereto, cannot be brought into an answer to a supplemental complaint by merely referring thereto and adopting the same as a part thereof.   *p. 57.*

TELEGRAPH COMPANIES.—*Collection of Taxes by Suit in Name of State.—Injunction.*—An injunction restraining county auditors and county treasurers from collecting taxes assessed against a telegraph company, does not prevent an action to recover the same in the name of the State, under section 8488 Burns' R. S. 1894.   *p. 58.*

SAME.— *Taxation.—Penalty.—Constitutional Law.*—Section 11, Act of March 6, 1893 (8488, Burns' R. S. 1894), providing that if a telegraph company refuse to pay the taxes assessed against it, an action for the collection thereof may be maintained in the name of the State by the Attorney-General, and the judgment shall include a penalty of fifty per cent. of the amount of the taxes is constitutional.   *pp. 61–63.*

From the Marion Circuit Court.   *Affirmed.*

*Chambers, Pickens & Moores* and *Brown & Wells,* for appellant.

*W. A. Ketcham,* Attorney-General, *Merrill Moores, L. O. Bailey,* and *Smith & Korbly,* for State.

HOWARD, J.—This was an action by the State for the collection of taxes due by the appellant.   It was brought under provisions of section 11 of an act supplementary to and amendatory of the general tax law of 1891, and providing for the taxation of telegraph, telephone, express and other like corporations, approved March 6, 1893.   Acts 1893, p. 381; Burns' R. S. 1894, section 8488.

The section reads as follows:

"Sec. 11.  In case any such association, co-partnership or corporation as named in this supplemental and amendatory act shall fail or refuse to pay any taxes assessed against it in any county or township in the State, in addition to other remedies provided by law for the collection of taxes, an action may be prosecuted in the name of the State of Indiana by the prosecuting attorneys of the different judicial circuits of the State, on the relation of the auditors of the different counties of this State, and the judgment in said action shall include a penalty of fifty per cent. of the amount of taxes so assessed and unpaid, together with reasonable attorney's fees for the prosecution of such action, which action may be prosecuted in any county into, through, over or across which the line or route of any such association, co-partnership or corporation shall extend, or in any county where such association, company, co-partnership or corporation shall have an office or agent for the transaction of business.  In case such association, company, co-partnership or corporation shall have refused to pay the whole of the taxes assessed against the same by said state board of tax commissioners, or in case such association, company, co-partnership or corporation shall have refused to pay the taxes or any portion thereof assessed to it in any particular county or counties, township or townships, such action may include the whole or any portion of the taxes so unpaid in any county or counties, township or townships, but the Attorney-General may, at his option, unite in one action the entire amount of the tax due, or may bring separate actions in each separate county or township, or join counties and townships, as he may prefer.  All collection of taxes for or on account of any particular county made in

any such suit or suits, shall be by said Auditor of State accounted for as a credit to the respective counties for or on account of which such collections were made by said Auditor of State, at the next ensuing settlement with such county, but the penalty so collected shall be credited to the general fund of the State; and upon such settlement being made, the treasurers of the several counties shall, at their next settlements, enter credits upon the proper duplicates in their offices, and at the next settlement with such county report the amount so received by him in his settlement with the State, and proper entries shall be made with reference thereto: *Provided, however,* That in any such action the amount of the assessment fixed by said state board of tax commissioners and apportioned to such county, or apportioned by the county auditor to any particular township, shall not be controverted."

The original complaint was filed by the Attorney-General, May 7, 1894, and was for the collection of the taxes then remaining due by the appellant for the year 1893, in the several counties of the State in which the company owned property subject to taxation under said act. The answer to this complaint, which was not filed until January 12 , 1895, was an elaborate and detailed attack upon the validity of the law. A demurrer was sustained thereto, June 11, 1895.

In relation to this answer, the following admission is made in appellant's brief: "The allegations of the answer to the original complaint are, in substance, the same as the allegations in the telegraph company's complaint in the suit of the company against Taggart *et al.,* as auditors and treasurers of the various counties in the State, changed so as to constitute an answer."

As the contentions of the company in the suit referred to against Taggart *et al.* were overthrown,

and the validity of the law sustained, both in this court and in the Supreme Court of the United States, we may consider the decisions so rendered a sufficient reply to the argument here repeated against the constitutionality of the law. *W. U. Tel. Co.* v. *Taggart,* 141 Ind. 281; same, 163 U. S. 1. That the proceedings before the state board of tax commissioners were in all respects regular also follows; for it is expressly admitted in the answer that in assessing appellant's property the state board proceeded in accordance with the requirements of the law so upheld.

On the same day on which the demurrer to the answer to the original complaint was sustained, that is, June 11, 1895, the Attorney-General, by leave of court, filed a supplemental complaint for the collection of appellant's taxes for 1894, those taxes having also become due and being then unpaid. To this supplemental complaint a demurrer was overruled on June 22, 1895. An answer to the supplemental complaint was filed June 27, 1895; and, on September 3, 1895, a demurrer was sustained to the answer.

In the first paragraph of the answer to the supplemental complaint, it is said: "The defendant for answer to the supplemental complaint herein, adopts and makes a part hereof all the allegations of the answer to the complaint herein not specially relating to the assessment and collection of taxes for the year 1893, except as herein differently alleged." Since this answer to the supplemental complaint was filed June 27, 1895, and since the answer to the original complaint had then been taken out by the sustaining of the demurrer thereto, on June 11, 1895, it would seem that the first answer could not thus be brought into the second by reference, as here attempted. Except as to the correctness of the ruling on demurrer, the first answer was wholly out of the record at the time when

the second answer was filed. In addition, as we have already seen, the decision in the case of *W. U. Tel Co.* v. *Taggart, supra,* shows the first answer to have been bad.

In the answer to the original complaint it was specially averred, that, on the 19th day of December, 1893, that is, before the bringing of this action, the appellant had brought the suit in the case of *W. U. Tel. Co.* v. *Taggart, supra,* to enjoin the county auditors and treasurers of the several counties in which the appellant owned property, from proceeding to collect the taxes herein sued for; and that, while the injunction prayed for was denied, both in the trial court and in this court, yet that a temporary injunction was granted in each of the said courts until the final decision of the case, in the successive appeals taken therein, and that such temporary injunction was still in force at the time of filing said answer.

In the answer to the supplemental complaint, a similar averment was made as to an injunction granted in the circuit court of the United States for the district of Indiana, prohibting the Auditor of State from certifying to the several county auditors the valuations of appellant's property as made by the state board of tax commissioners for the year 1894. *W. U. Tel. Co.* v. *Henderson,* 68 Fed. 588.

Those averments were not made by way of pleas in abatement as to other suits pending in relation to the collection of the taxes for which this suit was brought. Neither did the averments show that the injunctions against the officers named had been in any way violated. But the intention seems to have been to argue that, in some manner not shown, the State of Indiana, the plaintiff in the case at bar, had been, in such other suits, enjoined from bringing her action in this case for the collection of the overdue taxes.

In so far as the action in the United States court is concerned, it is enough to say that the court could not, and did not assume, to have any jurisdiction to enjoin any action on the part of the State. As to the restraining order granted in the trial court, and continued in this court, in the case of *W. U. Tel. Co.* v. *Taggart, supra,* that had relation to county auditors and county treasurers. No attempt was made, or could be made, to control the action of the State, provided the law afforded her any remedy independent of the action of the officers against whom the restraining orders had been issued.

But the statute under consideration did furnish the State an additional and independent remedy for the collection of the taxes due her. It is provided, in section 11, as we have seen, that in case any such corporation "shall fail or refuse to pay any taxes assessed against it * * * in addition to other remedies provided by law for the collection of taxes, an action may be prosecuted in the name of the State of Indiana" for the collection of such taxes, by the prosecuting attorney or the Attorney-General, according to the respective jurisdictions of these officers. In instituting this action, the Attorney-General merely availed himself of the power given the State by the law itself. It will not be questioned that the emergency had arisen which was contemplated in the statute: the appellant company had failed and refused to pay the taxes assessed against it, and which were overdue; the action for their collection might therefore be prosecuted in the name of the State. And this is what was done.

There is good reason, too, for the additional remedy thus given. The general tax law contemplates the payment of all taxes in the year succeeding their assessment, easing such payment by providing that it may be made in two installments. A possibility of de-

linquency is also provided for, but only for one year longer; and for the first six months of delinquency a penalty of ten per cent. is fixed, to be increased to six-teen per cent. for the second six months of delin-quency.

It has been held that the law does not provide for interest on such delinquent taxes, but only the penalties named. *Evansville, etc., R. R. Co. v. West, Treas., et al.*, 139 Ind. 254. There remain, therefore, in general, only the provisions for distress and sale of property, in order, finally, to make collection of taxes from dilatory, obdurate or dishonest taxpayers. But the property of telegraph and other corporations pro-vided for in this act, is of such a nature that it, or a part of it, cannot be sold for the payment of taxes without manifest inconvenience to the public. Re-ceivers may be appointed and other appropriate meas-ures taken for the collection of debts due by such cor-porations, but only in such manner that their busi-ness, in which the public and the State have a vital interest, may not be interrupted. *Louisville, etc., R. W. Co. v. Boney*, 117 Ind. 501, 3 L. R. A. 435; *W. U. Tel. Co. v. Massachusetts*, 125 U. S., at p. 554.

The legislature, in its wisdom, conceived that for such properties it was advisable that there should be provision that collection might be made by suit, with appropriate penalties, so that a judgment might stand against the delinquent, to bear interest until such time as the debt might be paid, or might be collected in receivership proceedings or otherwise. In this way the public treasury might, in some degree, be com-pensated for the loss of the use of its revenues, caused by the failure to pay taxes when due. The properties being of a special and peculiar class, special remedies are appropriate to bring about that equality required in the assessment and collection of taxes. All author-

ities concede that classification for purposes of taxation is not only permissible, but even necessary. *Home Ins. Co.* v. *New York*, 134 U. S. 594; *Charlotte, etc., R. R. Co.* v. *Gibbes*, 142 U. S. 386; *Cleveland, etc., R. W. Co.* v. *Backus, Treas*, 133 Ind. 537; *Commonwealth* v. *Delaware Div. Canal Co.* (Pa.), 2 L. R. A. 798, 16 Atl. 584.

In the last cited authority, it is well said: "The power to impose taxes for the support of the government, subject to the limitations of the Constitution, still belongs to the Legislature; the selection of the subjects, their classification and the methods of collection are purely legislative matters. When the action of the Legislature, with respect to these matters, is not repugnant to the Constitution, it would certainly be a case of the grossest inequality, which would call for the intervention of the courts. * * *

"It may be conceded, however, that classification should be made according to some reasonable, practical rule, drawn from experience, which would prevent a gross inequality in the burdens of taxation. * * *

"Absolute equality is of course unattainable; a mere approximate equality is all that can reasonably be expected. A mere diversity in the methods of assessment and collection, however, if these methods are provided by general laws, violates no rule of right, if when these methods are applied the results are practically uniform. If there is a substantial uniformity, however different the procedure, there is a compliance with the constitutional provisions; * * * even when there may be some disparity of results, if uniformity is the purpose of the Legislature, there is a substantial compliance. * * * Nor is classification necessarily based upon any essential differences in the nature or, indeed, the condition of the various sub-

jects; it may be based as well upon the want of adaptability to the same methods of taxation, or upon the impracticability of applying to the various subjects the same methods, so as to produce just and reasonably uniform results; or it may be based upon well grounded considerations of public policy."

Indeed, in our own tax law, it has been found necessary, in order to secure just and uniform results, to classify the property of the State into no less than twelve distinct divisions, differing in various respects, according to the nature of the property, as to the modes of assessment or the modes of collection of the taxes thereon. The object in each case, however, has been to secure uniformity in the rate and assessment of the taxes, that all may pay in the same proportion upon the true cash value in each case.

Appellant makes particular complaint of the fifty per cent. penalty provided for in suits under the statute. What we have said as to the nature of appellant's property, and the difficulty in coercing payment of delinquent taxes due thereon, will fully answer this objection. In the sale and redemption of other forms of property, in case of delinquency, there is often quite as heavy a penalty imposed before the property is finally relieved from the paramount tax lien. By section 56 of the general tax law (section 8466, Burns' R. S. 1894), the county auditor is required to add fifty per cent. to the valuation in case the property-owner has refused to list his property or subscribe to the oaths required. The validity of a similar penalty was upheld in *Boyer* v. *Jones et al.*, 14 Ind. 354. Other like penalties and heavy charges are imposed in different sections of the tax law, where the property-holder has been neglectful or otherwise at fault in matters relating to the assessment or payment of his taxes. See numerous provisions of the tax law as to penalties,

costs of redemption, etc., resulting from failure to pay taxes when due.   Sections 150 to 225 of the general tax law of 1891 (section 8568-8643, Burns' R. S. 1894).

In the event that one is called upon to pay a tax which he believes to be illegal, he has two courses open to him.  He may resist payment at the hazard of all penalties in case the decision shall be against him; or he may pay the tax under protest, and then, in case the decision is in his favor, demand the return of his money.  See *Rumford Chemical Works* v. *Ray* (R. I.), 34 Atl. 814.  No one need pay any penalty except through his own wrongful act.

The government is in need of its revenues, and these revenues will be paid promptly by all good citizens. In case of failure to comply with such duty, such penalties will be imposed as will, in the judgment of the law-making power, best compel compliance with the law in each case, to the end that all the property-owners of the State may bear their equal share of the public burden.  Such penalties, as we have seen, are never imposed upon those that pay their taxes when due; the imposition of the penalty being an effort on the part of the law-makers to compel good citizenship on the part of all taxpayers, that none may shirk the common duty.  The validity of the penalty here complained of has, besides, been already affirmed by this court in the case of *State* v. *Adams Express Co. et al.,* 144 Ind. 549.

Other questions discussed by counsel have, we think, been sufficiently considered by us in this and other cases recently decided.  Indeed, in view of the decisions of this court and of the Supreme Court of the United States in relation to our present tax laws, we can find no merit in this appeal.  There should be an end to litigation.

The judgment is affirmed.