## CITY OF GALVESTON v. HADEN.
## (No. 7750.)

(Court of Civil Appeals of Texas. Galveston. June 21, 1919.)

1. TAXATION ⬤⟷260 — PERSONAL PROPERTY — SITUS—RESIDENCE OF OWNER.

Under Const. art. 8, § 11, and Rev. St. arts. 7510, 7514, the proper place to tax personal property is the residence of the owner, provided it has not acquired a situs for purpose of taxation elsewhere, in which instance it is taxable where situated.

2. MUNICIPAL CORPORATIONS ⬤⟷966(1)—TAXES—PERSONAL PROPERTY — VESSELS — GALVESTON.

Vessels, derricks, horses, and wagons used in business of dredging and marketing mud shell, permanently situated at places other than city of Galveston, under control of agents of owner permanently residing at such places, were not subject to Galveston's personal property tax under Galveston City Charter, § 54, though Galveston was place of owner's residence, and though tugboats were registered for port of Galveston under U. S. Comp. St. § 7719, and discharged cargoes thereat, and though property was not taxed at place of its situs.

3. TAXATION ⬤⟷528—PENALTIES—INTEREST—ERRONEOUS ASSESSMENT—TENDER.

Taxpayer was not liable for interest or penalties on back taxes, where he could not have paid the taxes because collector refused to accept payment therefor unless payment was also made of taxes erroneously assessed; a tender of such taxes having been unnecessary, because position taken by collector rendered it a useless proceeding.

Appeal from District Court, Galveston County; Clay S. Briggs, Judge.

Suit by the City of Galveston against W. D. Haden. From judgment rendered, plaintiff appeals. Affirmed.

Mart H. Royston and P. A. Drouilhet, both of Galveston, for appellant.

McDonald & Wayman, of Galveston, for appellee.

GRAVES, J. The city of Galveston brought this suit against W. D. Haden to recover for taxes alleged to be due it from him on certain boats, barges, and vessels for the years 1905 to 1914, inclusive, on various horses, mules, and wagons for the years 1906 to 1911, inclusive, and on several derricks for the year 1914.

The cause was tried before the court upon an agreed statement of facts, wherein, among other things, it was stipulated:

That Haden, being engaged in the business of dredging and marketing mud shell, had both resided and maintained his principal office in Galveston during all the time

---

material to the controversy; that he did business and had dredge plants located at several places in Texas, such as Redfish Reef, located in Galveston Bay, about 14 miles from the city's limits, Sabine Lake, on the Texas and Louisiana line, Port Arthur, Orange, and Seadrift, having local agents residing at these different places to look after the transaction of his business; that of the property mentioned all his tugboats were registered during the time involved by the collector of customs of the United States custom house for the port of Galveston, as prescribed by section 7719, U. S. Comp. St., none of the barges or dredges, which move only when towed, being required to be registered; that none of the dredges, barges, tugs, and derricks located at Sabine, Port Arthur, Orange, or Seadrift were in or near the corporate or territorial limits of the city of Galveston at any time during the years for which the tax assessments were made; but, on the other hand, were stationed and kept there for use in dredging and transporting shell in and around the places where the plants were located. The derricks at each of those places were on the wharves there, and were used in unloading shell brought in by barge. The dredge, tugs, and barge at Orange were kept there for use in dredging a canal near Orange for the United States government. When any of this floating property was tied up, or not in use for any cause, it was carried to Cedar Bayou, in Harris county, Tex., where Haden had a shipyard and marine ways, to which he carried portions of his floating plant to be repaired, or tied up, when not in use.

The only vessels that came to Galveston were those forming a part of the Redfish Reef dredge plant, which is located about 14 miles northeast of the corporate and territorial limits of the city of Galveston. A dredge was located on this reef, from which Haden transported mud shell in barges towed by a tug to the Galveston wharf, to the wharf at Texas City, to Houston, and other places reached by water in the vicinity of Redfish Reef. The barges and tugs, however, used in connection with the Redfish Reef plant were used more frequently in transporting shell to Galveston than to any of the other named places. After the cargoes from barges brought to Galveston were discharged, they would be towed back to the dredge to be again reloaded. When any of the Redfish Reef plant needed repairs, or was not in use by reason of there being no shell to transport, or when there were breakdowns of the dredge, or when not in use for any other cause, for any length of time, they, too, were taken to the shipyard and marine ways at Cedar Bayou.

The horses, mules, wagons, and two of the derricks were located and kept within the city's limits during the time for which it was sought to collect taxes upon them, and the trial court gave the city judgment for the amount found to be due upon these alone, $255.76, without interest or penalties, denying a recovery as to all the property not situated within its territorial limits.

The city appeals, contending: (1) That it was likewise entitled to collect taxes upon that part of the property not kept within its limits; and (2) that the judgment awarded as to that which had been so kept should have carried both interest and penalties, since the amount had to be collected by suit.

Under the provisions of its charter, and various ordinances from year to year carrying them into effect, the city was authorized—

"to levy for general purposes an annual ad valorem tax on all real, personal and mixed property within the territorial limits of said city. * * * The meaning of the term 'personal property' as used in this act, shall be construed to include all household furniture, moneys, goods, capital and chattels, all ships, steamboats and vessels, whether at home or abroad," etc. Section 54, Galveston Charter, Sp. Laws 27th Leg. c. 12, p. 131.

In paragraph 7 of the statement of facts this agreement appears:

"Defendant has been ready and willing to pay the taxes on the derricks, horses, mules, and wagons for the years admitted in this stipulation to have been located within the territorial and corporate limits of the city of Galveston, but could not pay the same because the tax collector of the city of Galveston declined to eliminate the other property."

The court filed the following conclusions of law:

"(a) Plaintiff, the city of Galveston, is entitled to recover of defendant the sum of $255.76, being the amount of taxes due on the horses, mules, and wagons for the years 1906 to 1911, inclusive, and on derrick No. 1 and derrick No. 4 for the year 1914; it appearing that all of said property was, on the first day of each of the years named, located within the territorial and corporate limits of the city of Galveston.

"(b) Plaintiff is not entitled to recover interest or penalties on said taxes, since defendant could not pay the same because the tax collector declined to accept payment therefor unless payment was made of taxes erroneously assessed for said years.

"(c) Plaintiff is not entitled to recover on account of any of the property except the horses, mules, and wagons for the years 1906 to 1911, inclusive, and derricks Nos. 1 and 4 for the year 1914, because it appears from the agreed statement of facts that none of said property had acquired a situs in the corporate or territorial limits of the city of Galveston for the years assessed, but, on the contrary, had a situs elsewhere; its location at points outside of Galveston being in no sense temporary. Guaranty Life Ins. Co. v. City of Austin, 108 Tex. 209, 213, 215 [190 S. W. 189]; City of Galveston v.

Guffey Petroleum Co. [51 Tex. Civ. App. 642], 113 S. W. 585; State v. Higgins Oil & Fuel Co., 116 S. W. 617; North American Dredging Co. v. State, 201 S. W. 1065, 1067."

[1] This court is not prepared to state different ones, and therefore adopts the conclusions thus entered below as its own. The law seems to be well settled in Texas that the proper place to tax personal property is the residence of the owner, provided it has not acquired a situs for purposes of taxation elsewhere, in which instance it is to be taxed where situated. Constitution of Texas, art. 8, § 11; R. S. arts. 7510 and 7514; City of Austin v. Insurance Co., 211 S. W. 482. Indeed, the cases cited in the foregoing conclusions so hold, particularly the Guffey Case, with reference to such physical property as is here involved, and both litigants appear to proceed upon the assumption that such is the rule, differing only as to whether this property was shown to have a situs where located. The question, then, upon this feature of the case turns in this court, on whether or not the evidence was sufficient to support the trial court's finding that the property as to which any recovery for taxes was denied had in fact acquired a situs outside of the city of Galveston, where its owner resided.

[2] An examination of the evidence convinces us that the finding has ample support, as preceding recitations have shown none of these vessels were even in the city of Galveston during the years for which the tax assessments were levied, except those used in connection with the Redfish Reef plant, located 14 miles from Galveston, which came to the city only for the purpose of discharging cargo, nor of course were any derricks, except the two on the Galveston wharves, as to which recovery was allowed; the outside plants at the different places named were permanent so far as the proof in any way indicates, the business from them being handled by agents who resided there, and the fixed arrangements being that none of the equipment from any of them, which might perchance come to Galveston to unload, were to remain there, but should either return to the point of origin, or to the established shipyards at Cedar Bayou, Tex.

In these circumstances, to say that other jurisdictions than the city of Galveston might not have subjected such tangible property as this to taxation is, it seems to us, to run directly counter to the requirement of article 8, § 11, of our Constitution, and the above-cited holdings of the courts construing it, which is:

"All property, whether owned by persons or corporations, shall be assessed for taxation, and the taxes paid in the county where situated."

Whether the other authorities did levy assessments on the property or not is beside the issue, since the acquirement of a situs there would deprive Galveston of any right to tax it. See City of Austin v. Insurance Co., 211 S. W. 482; also City of Galveston v. Guffey, supra, where it is further held that the mere enrollment of vessels at the port of Galveston does not give it the right to tax them.

[3] Appellant's second contention is completely answered, it is thought, by a recurrence to the recitations in the previously quoted portion of paragraph 7 of the agreed statement of facts. While the record is silent as to whether or not the appellee ever made an actual tender of the amount due upon that portion of the property alone, the stipulation recites that he "could not pay the same because the tax collector of the city of Galveston declined to eliminate the other property." Under these conditions a tender was unnecessary, because the collector took a position which would have rendered it a useless proceeding.

The rule is laid down in 38 Cyc. 135, that—

A tender is dispensed with "where the tenderee makes any declaration which amounts to a repudiation of the contract, or takes any position which would render a tender, so long as the position taken by him is maintained, a vain and idle ceremony; as where he expressly declares that he will not accept the tender if it is made, or in any way prevents or obstructs a tender," etc.

The rule also is aptly stated in Terrell et al. v. Proctor et al., 172 S. W. 996–1000.

The conclusions stated require the overruling of all assignments and an affirmance of the judgment; that order has been entered.

Affirmed.