## MORRISON-KNUDSON CO., INC., ET AL. v. STATE BOARD OF EQUALIZATION, ET AL.

(No. 2243, March 30, 1943; 135 Pac. (2d) 927)

502

504

For the appellants there was a brief by *C. A. Brimmer,* of Rawlins, *Elery & McClintock* and *A. G. McClintock,* of Cheyenne, and oral arguments by *Messrs. Brimmer* and *McClintock.*

508

For the respondents, there was a brief by *Ewing T. Kerr*, Attorney General; *H. I. Bacheller*, Deputy Attorney General, and *Arthur Kline*, Assistant Attorney General, all of Cheyenne, and oral argument by *Mr. Kline*.

BLUME, Justice.

This is an appeal from a judgment of the district court of Laramie County affirming a tax assessment made by the State Board of Equalization against the Morrison-Knudson Company, a corporation, and others, appellants herein, under the use and sales tax acts of this state.

■ There was included in the order of assessment of the State Board of Equalization, affirmed by the district court, an assessment of use tax in the sum of $6782.09, by reason of personal property bought by appellants outside of this state and used in the construction of the so-called Seminoe Dam and Power Plant in this state. The facts in conection with that construction were found by the court as follows:

"That in the construction of said dam and power plant, said appellants purchased large quantities of sand, gravel and cement; which sand and gravel were first washed and screened and then mixed with cement and water in large mixers by appellants to form concrete; that said concrete was then poured into large forms, previously constructed, to set and harden; that

large quantities of reinforcing steel were used in said cement and used elsewhere in the construction of said dam and power plant; that one section of said dam was poured at a time and by many repetitions of this act the finished dam and power plant were constructed; that in the construction of said dam and power plant certain other raw materials, including lumber, nails, bolts and nuts, were used and were united with other materials to form said dam and power plant; that the Seminoe Dam and Power Plant was a finished product, the result of the placing together and blending of the aforementioned raw materials."

No exceptions were taken to this finding. The appellants claim that they are exempt from the payment of the tax by reason of the fact that they are manufacturers within the meaning of the provisions of Subdivision (e), Section 4, Chapter 118, Session Laws 1937, known as the Use Tax Act, which exempts from the provisions thereof "tangible personal property or product which directly enters into or becomes an ingredient or component part of any manufactured article or substance or commodity and the furnished container, label or shipipng case thereof". The court did not proceed to find what part of the purchases above mentioned became an ingredient or component part of the dam, and merely found that the dam is not a "manufactured article". The appellants also contended that part of the property was not readily purchasable and hence exempt under subdivision (k) of Section 4 of the Act aforesaid. The court made no finding on this contention. It is not necessary to consider the lack of finding in this respect, for it is conceded in the brief of appellants "that if they (appellants) are within the exemptions of the act it must be as manufacturers, and that if the dam and power plant is not a manufactured article there is no statutory basis for the exemption claimed by them as to the purchases in question."

As supporting the contention that they are manufacturers, and that the dam constructed is a manufac-

tured article within the meaning of the use tax act, appellants cite us to several cases, including Friday v. Haul & Kaul Co., 216 U. S. 449, 54 L. Ed. 562, 30 Sup. Ct. 561, a bankruptcy case. Numerous cases have been decided on the question as to who is a manufacturer within tax exemption provisions. Notes with numerous cases on the subject are found in 10 A. L. R. 1273 and 116 A. L. R. 1111. Some of the cases are irreconcilable. In State v. American Cresote Works, 163 La. 547, 112 So. 412, for instance, it was held that one who creosotes ties is a manufacturer. The contrary was held in Indiana Cresoting Co. v. McNutt, 210 Ind. 656, 5 N. E. (2d) 310. In a broad sense, no doubt, the term "manufacturer" may be said to include the construction of a dam, but courts have recognized that the term must be construed in connection with the subject matter with which it is used, and that the legislative intention must be sought. In some cases the term has been given a broad, in others a narrow, meaning. In speaking of the making of a dam, we ordinarily use the term "construction", and "manufacture". Section 112-101, Rev. St. 1931, provides that "words and phrases shall be taken in their plain and usual sense, but technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import". We have no reason to believe that the legislature in the instant case used the term "manufacturing" in a technical sense,, and unless we can find that they used it in that sense we presume that the legislature used the term in its natural, ordinary and everyday meaning. Ward v. Board of Commissioners, 36 Wyo. 460, 256 Pac. 1039; State ex rel. v. Jack, 52 Wyo. 173, 183, 70 P. (2d) 888; 59 C. J. 975.

Some cases tend to sustain the contention that construction work is manufacturing within taxing laws. Commonwealth v. Keystone Bridge Co., 156 Pa. 500, 27 Atl. 1, and see Comm. v. Filbert Paving Construc-

tion Co., 229 Pa. 231, 78 Atl. 101. In Wesco Co. v. State Revenue Commission, 178 Ga. 479, 173 S. E. 404, however, it was held that a highway contractor who manufactured asphalt as incidental to surfacing roads was taxable under the general provisions of the occupational tax statute and not under a provision relative to the business of "manufacturing, compounding or preparing for sale". The case is closely in point here. In Syracuse Improvement Company v. Morgan, 59 App. Div. 302, 69 N. Y. S. 263, and People ex rel. v. Knight, 99 App. Div. 62, 90 N. Y. S. 537, it was held that the preparation of a street for the laying of the pavement and placing the paving thereon is not in any sense a process of manufacture within the meaning of the revenue law. So, too, a construction company engaged in the business of erecting concrete buildings was held not to be a manufacturing company. People ex rel. v. Turner Construction Co., 186 N. Y. S. 890, 196 App. Div. 231, affirmed in 231 N. Y. 610, 132 N. E. 908. The court said in part:

"But assuming that the construction of concrete buildings may be technically considered as a manufacturing operation, it nevertheless is a fact that it is an operation which resulted in producing real property and not merchandise, which latter is personal property, movable and vendable as such. A concrete construction is an immovable mass affixed to the realty and a part thereof. Although the construction of concrete buildings may be an operation of manufacture, it is also a building operation. It by no means follows, however, because the appellant may be a manufacturing corporation under the bankruptcy act, that it is such under the tax laws of this state."

See also Comm. v. Paul W. Bounds Co., 316 Pa. 29, 173 Atl. 633. In Com. v. Wark Co., 301 Pa. 150, 151 Atl. 786, the court stated that "a construction corporation, in the sense of doing construction work, such as erecting buildings, is an organization clearly dis-

tinguished from a corporation organized for and engaged in producing an article of commerce, and the word 'manufacturing' by no natural meaning should include the former class". And in 38 C. J. 981, the text, after referring to the conflict of authorities, states that "manufacture" seems to refer, in its ordinary meaning, to goods, wares and merchandise, to the making of articles of commerce ordinarily the subject of barter and sale, and does not include building or construction of outdoor structures". In re Appeal of Koss Const. Co., 214 Iowa, 125, 241 N. W. 495, speaking of a construction company, the court said that "it is a builder, not a manufacturer, any more than the builder of a house is a manufacturer". And the court expressed the opinion that "the legislative intent was to exempt from taxation manufacturers who are engaged in manufacturing personal property for sale, and not builders or 'constructors" who are engaged in erecting permanent structures, such as paving, which became a permanent part of the real estate". And the supreme court of New Mexico in Iden v. Bureau of Revenue, 43 N. W. 205, 89 P. (2d) 519, which had under consideration a taxing statute stated that "we conclude that the word 'manufacture' as used in the statute has reference to one who manufactures and sells his products, and not to one who consumes them."

And that, we think, is the situation in this case. A number of indications to that effect are contained in the Use Tax Act. The work done in this case was construction work pursuant to a public contract. Subdivision (j) of Section 4 of the act exempts property used in the performance of a contract on public works when the contract to that effect was entered into prior to April 1, 1935. It is not claimed that the contract in this case was entered into prior to that date. That exemption was based evidently on the theory that bids for

such work were made on the basis of the tax laws in effect at that time, and that it would be unjust to impose a tax on the contractor thereafter. That subdivision would seem to indicate that the appellants, who constructed a public work after April 1, 1935, were not to be exempted. Gas and electricity and coal were exempted, even when used directly in manufacturing. Yet these items, all obtainable in Wyoming, are subject to the sales tax when sold to the ultimate consumer, and no reason is apparent why they should be exempt when used in manufacturing, unless upon the theory that the ultimate consumer would be chargeable under the sales tax act. But there is no ultimate consumer in the case of the Seminoe Dam who would pay such tax. Again, exemption is given to "livestock, feed for use in feeding livestock or poultry for marketing purposes; all seeds, root bulbs, small plants and fertilizer planted and applied to land, the products of which are to be sold". This exemption was given evidently upon the theory that taxes should not be cumulative, but that in these cases, the ultimate consumer would pay a sales tax. It is generally recognized, and we have stated, that the use tax is complementary to the sales tax. Continental Supply Co. v. People, 54 Wyo. 185, 88 P. (2d) 488. The former was intended to apply to sales of goods bought outside of this state and brought into this state, so as to be put on an equal footing with goods subject to the sales tax. In the absence, then, of a contrary indication in the use tax act, the intention evidently was to apply the same rules and principles, as nearly as possible, to both taxes. The two acts were passed at the same session of the legislature. We should, accordingly, be able to receive some light on the question before us from the sales tax act. That act has a clause somewhat similar to the clause of the Use Tax Act under which appellants claim exemption here.

Subdivision (f) of Section 1 of the Sales Tax Act (c. 102, Sess. L. 1937) provides as follows:

"Each purchase of tangible personal property or product made by a person engaged in the business of manufacturing, compounding for sale, profit or use, any article, substance or commodity which directly enters into and becomes an ingredient or component part of the tangible personal property or product which he manufactures or compounds, or the furnished container, label, or the shipping case thereof, shall be deemed a wholesale sale and shall be exempt from taxation under this Act."

We have considered exemptions under this act in several cases, and have held that the legislature evidently intended to prevent a piling up of sales taxes. State v. Capital Coal Co., 54 Wyo. 176, 88 P. (2d) 481; Board of Equalization v. Oil Well Supply Co., 51 Wyo. 226, 65 P. (2d) 1093; State Board of Equalization v. Stanolind Oil & Gas Co., 51 Wyo. 237, 65 P. (2d) 1095. It may be noted that the product manufactured, which is exempt under the subdivision just quoted, shall be considered a *wholesale sale*. We should, accordingly, refer to and read that subdivision in connection with subdivision (d) of the same section, which provides that "the term 'wholesale sale' means a sale of tangible personal property by wholesalers to retail merchants, jobbers, dealers or other wholesalers, and does not include a sale by wholesalers to users or consumers not for sale". This would seem to make it clear beyond any question that the manufactured articles intended to be exempted under the sales tax act, and so under its complement, are the manufactured articles sold in commerce. We cannot, accordingly, sustain the contention of appellants in this connection, and the tax in that connection must be upheld.

■ After the construction of the Seminoe Dam, the appellants had no further use for much of the property purchased and wanted to sell it. The course adopted by

them is stated by the trial court in its findings which, on this point, are as follows:

"That at the conclusion of the work upon said dam and power plant, appellants had in their possession a large quantity of equipment which they desired to sell; that a catalogue was prepared by appellants listing such equipment and quoting prices therefor; that said catalogue further provided and stated that the terms of all sales would be f.o.b. Parco, Wyoming; that following the distribution of said catalogue appellants received many orders for the purchase of such equipment; that the bulk of said orders was received through the United States mail and others were received by telephone or telegraph; that in many instances agents or representatives of the purchasers of said equipment called at Parco, Wyoming, to inspect the equipment and orders were subsequently received therefor by mail or telegraph from outside the State of Wyoming; that following receipt of such orders appellants shipped said equipment to the said purchasers f.o.b. Parco, Wyoming; that in some of said instances appellants delivered the equipment to the Union Pacific Railroad at Parco, Wyoming, for shipment to the purchasers; that in other instances the equipment was delivered to truck lines and in still other instances delivery was made directly to the purchasers who loaded the equipment upon their own trucks and trailers in the State of Wyoming; that there is no complete proof as to the method by which any particular equipment was shipped or as to the quantity shipped by any particular method, but that all sales had been consummated by mail, telegraph or telephone prior to such shipment; that the destination of all of such equipment was points outside the State of Wyoming."

No exceptions were taken to these findings: The evidence shows that "quite a bit" of the property offered for sale by appellants was sold to residents of this state and that a sales tax of two percent was paid thereon. The sales made to parties outside of this state amounted to about $132,000, and a sales tax of two percent, amounting to $2,640|80, was assessed against appel-

lants by reason of these sales, pursuant to the provisions of Chapter 102, Section 4, Session Laws of 1937. The trial court confirmed this assessment. The appellants on this appeal contend that the sales were made in interstate commerce and that the tax assessed against them is invalid for that reason. Most of the cases cited by them were considered in State Board of Equalization v. Blind Bull Coal Co., 55 Wyo. 438, 101 P. (2d) 70, and we shall not do so again in this case. It may be freely admitted that expressions contained in a number of decisions of the United States Supreme Court, abstractly considered, would condemn the sales tax in this case. And it may be conceded that sales to purchasers in another state are not withdrawn from federal control because the goods are delivered f.o.b. at stated points within the state of origin for transportation. Santa Cruz Fruit Packing Co. v. National Labor R. Board, 303 U. S. 452, 58 Sup. Ct. 656; Dahnke-Walker Milling Co. v. Bondurant, 257 U. S. 282, 42 Sup. Ct. 106; Savage v. Jones, 225 U. S. 501, 32 Sup. Ct. 715. These cases do not deal with state taxes, and do not hold that every burden or hindrance, however incidental, will be contrary to the commerce clause of the Constitution of the United States, although particular burdens may have that effect. In cases involving such taxes the court must take into consideration not only the commerce clause of the U. S. Constitution, but also the power of the state to tax for the purpose of continuing its existence, and while the latter fact was overlooked in earlier years, and that without particular harm, it has come into prominence in the last decade so that courts have sought a compromise by protecting, in so far as necessary, equality of interstate commerce with intrastate commerce, while at the same time leaving to the states reasonable means to collect necessary revenues. Southern Pacific Co. v. Gallagher, 306 U. S. 167, 59 Sup. Ct. 389. Articles, more or less exhaustive,

treating the subject of state taxation of property which is intended to enter into or which has been in interstate commerce, historically, are found in 52 Harv. L. R. 617, 644, "Sales Tax and Interstate Commerce"; 53 Harv. L. R. 909, 939, "New Light on Gross Receipt Taxes"; 26 Virginia L. R. 1030, 1044, "State Sales Taxes"; 38 Columbia L. R. 49-79, "Sales and Use Taxes"; 48 Yale L. Jr. 273-288, "The Commerce Clause and State Sales Taxes."

It is now fully recognized that interstate business must pay its way. Postal Telegraph Cable Co. v. Richmond, 249 U. S. 252, 259, 39 Sup. Ct. 260, 63 L. Ed. 590; Gwin, White & Prince v. Henneford, 205 U. S. 434, 59 Sup. Ct. 325; Western Livestock v. Bureau of Revenue, 303 U. S. 250, 58 Sup. Ct. 546, 83 L. Ed. 823. See 38 Col. L. R. 49. As stated by Mr. Justice Stone in McDoldrick v. Berwin-White Coal Co., 309 U. S. 33, 60 Sup. Ct. 388; "It is not the purpose of the commerce clause to relieve those engaged in interstate commerce of their just share of state tax burdens merely because of an incidental or consequental effect of the tax as an increase in the cost of doing the business". And Mr. Justice Reed stated in Southern Paciffc Co. v. Gallagher, supra, that "the prohibited burden upon commerce between the states is created by state interference with that commerce, a matter distinct from the expense of doing business. A discrimination against it, or a tax on its operation as such, is an interference. A tax on property or upon a taxable event in the state, apart from operation, does not interfere". See also Coverdale v. Arkansas-Louisiana Pipe Line Co., 303 U. S. 604, 58 Sup. Ct. 736. It has been stated several times by the Supreme Court that interstate commerce should not be exposed to the risk of multiple taxation. Western Livestock v. Bureau of Revenue, supra; Gwin, White & Prince v. Seneford, supra; A. D. Adams Mfg. Co. v. Storen, 304 U. S. 307, 58 Sup. Ct. 913, 916. And

the court has not yet had the opportunity to sufficiently elucidate that rule, so that it can be definitely determined under what state of facts it applies. We do not, however, understand the rule to be applicable in a case in which there is a definite taxable event in the taxing state which cannot be duplicated in any other state. That is true in the case at bar. The title of the property passed and delivery of possession was made in this state. The Berwin-White Coal Company case, supra.

This case is similar to the case of State Board of Equalization v. Blind Bull Coal Company, 55 Wyo. 438, 101 P. (2d) 70. In that case sales of coal were made in Lincoln County, in this state, to purchasers who hauled the coal into Idaho for use or consumption. The coal was delivered by the seller at the mine and no claim for exemption was made by the purchasers. We held that the sales were not exempt from the sales tax imposed in this state and did not interfere with interstate commerce. Upon re-examination of the case there can scarcely be any doubt of the correctness of the decision. In that case the purchasers could do with the coal after delivery to them as they pleased. They were not compelled to transport it into Idaho, but might if they wished sell it again to someone in this state. In the case at bar, under the terms of the contract, the sales were made f.o.b. Parco, Wyoming. That was the place of delivery and passing of the title to the purchasers, unless an intention to the contrary appears. Sec. 98-906, Rev. St. 1931; 55 C. J. 332-333. No such contrary intention appears herein. The purchasers paid the freight, and, according to their testimony, they remitted the purchase price to the seller, or, in some instances, paid it in this state. Part of the property was hauled to Parco and delivered to the railroad company. The delivery at that point was not interstate commerce. Coe v. Town of Erroll, 116 U. S. 517, 6 Sup. Ct. 475,

20 L. Ed. 715. Part of the property was loaded onto trucks or trailers by the purchasers, and apparently at the Seminoe Dam in this state, where the property was located and had been used. While the purchasers in other states in most instances of course contemplated that the goods should be shipped by interstate carrier, that mere fact did not withdraw the property from the state"s power to tax it. State v. Blasius, 290 U. S. 1, 54 Sup. Ct. 34, 79 L. Ed. 131. The sellers did not agree to ship it to any destination outside of the state, and there is no evidence whatever in the record that they had any interest in the transportation beyond the point mentioned in the contract. The only testimony aside from that contract, and from what has already been stated, is the testimony of a witness who stated that "the purchaser usually specifies *how* he wants delivery". It would seem to be clear that under these facts the delivery to the purchasers was complete, the title passed to them, and the property was accepted by them, in this state.

Our attention has been called to O'Kane et al. v. State of New York, 283 N. Y. 439 ,28 N. E. (2d) 905, decided in 1940. In that case Kane and others, as a result of negotiations conducted by telephone, telegraph and mail, undertook to sell securities to parties in Philadelphia and Washington. The purchasers mailed confirmations to the sellers, and the latter to the purchasers. The sellers mailed to Philadelphia and to Washington, D. C., sight drafts for collection with the securities attached, and the banks remitted the proceeds by mailing checks to the sellers in New York City. Title to the securities did not pass until payment was received by the sellers. The court held, by a four to three decision, that a tax levied against the sellers on such transaction was not an interference with interstate commerce. The taxable event was held to be the making of the agreement for the sale of the property in New

York City. If the decision in that case is correct, there can be no doubt of the validity of the assessment of the sales tax in this case.

We think the case at bar is governed by Superior Oil Co. v. Mississippi, 280 U. S. 390, 50 Sup. Ct. 169, 74 L. Ed. 504, and the late case of Department of the Treasury v. Wood Preserving Co., 313 U. S. 62, 61 Sup. Ct. 885. In the first of these cases, the seller, in Mississippi, sold gasoline to the purchaser at Biloxi in that state. The purchaser loaded it on boats at their wharves, and shipped it to fishermen in Louisiana through transactions which in the long run were equivalent to sales. No consignee in Louisiana, nor a place of destination, were designated at the time of the sale. It was held that the sale was a sale in Mississippi, and that a tax to be paid by the seller did not interfere with interstate commerce. The facts in the Wood Preserving Corporation case were, so far as relevant here, about as follows: The corporation sold ties to the Baltimore and Ohio Railroad Company through a contract entered into in Ohio. The corporation did not itself produce any ties, but when a sale to the railroad company was made the corporation procured the tires sold from local producers in Indiana who delivered them to the railroad company in Indiana. At that point the corporation was represented by an agent, and the railroad company by an inspector. The ties were then examined, and those found by the inspector to be in accordance with specifications were accepted at that place. Indiana laid a tax on the receipts which the corporation derived from the sale of these ties. The court held the transaction to be intrastate and upheld the tax against the contention that it was a burden on interstate commerce. We think that the transactions in the case at bar were as clearly intrastate as the transactions in the two cases mentioned.

Penalties and interest were included in the as-

sessment, namely, a penalty of 10% amounting to $264.68 and interest in the sum of $555.83 in conection with the sales tax, and a penalty of 10%, amounting to $678.24 and interest in the sum of $2,402.10 in connection with the use tax assessed against the appellants, and the State Board of Equalization made a finding in that connection that the non-payment of these taxes was due to the negligence or intentional disregard of the taxing acts. The court confirmed the assessment of these items. The contention is that they are not due under the statutes and the circumstances in this case. Some additional facts should be stated. It appears that the appellants paid some sales taxes, and presumably made reports in connection therewith, but it paid no use taxes and made no returns of any such tax. On October 1, 1938, the State Board of Equalization notified the appellants of the assessment for use tax in the sum of $5,900. That assessment is not in question here, as it was superseded by an assessment for additional sales taxes and use taxes, made on September 12, 1939, in the principal sum of $12,012.09, penalty of $1,201.21, interest of $1,561.57, a total of $14,774.87. A petition for a hearing theron was filed by the appellants on September 21, 1939. On October 5, 1939, the board denied the petition for a hearing on the ground that a number of informal conferences had already been had with counsel for appellants, and that it would be useless to go over the same ground again, and for the further reason that the tax should be paid before a hearing should be granted, because the provisions of section 12 of the Sales Tax and Section 12 of the Use Tax Act provide that "If any person having made a return and paid the tax provided by this act, feels aggrieved by the assessment made upon him by the State Board, he may apply to the State Board by petition in writing within ten days after the notice is mailed to him for a hearing and correction of the amount of the tax so assessed."

Thereupon appellants commenced an action in the U. S. District Court of Wyoming, for a declaratory judgment and equitable relief, contending that the act is unconstitutional in denying a hearing until after the tax has been paid. The U. S. District Court by its judgment of November 13, 1940 (35 Fed. Supp. 553), held that "the conclusion is, that this court will go only so far as to declare, that the provisions of the Acts in question which require a prepayment of the tax before a hearing is allowed and the tax becomes irrevocably fixed, coupled with the absence of any provision to legally compel the refund of a determined illegally assessed tax makes the statutes here invoked invalid and in violation of the plaintiff's constitutional rights under the facts set up in this particular case". We may mention incidentally that the legislature by Chapters 106, 107, Session Laws 1941, made provisions for refund and corrected the previous law as to prepayment of the tax before a hearing before the Board. These acts went into effect April 1, 1941.

Thereafter, the exact date not appearing, the State Board of Equalization granted a hearing to appellants, to be had on December 21, 1940. The hearing was continued from time to time until May 6, 1941. As a result the Board, by opinion of June 2, 1941, eliminated from the assessment items of the value of $167,973.69 and reduced the original assessment by approximately $3,000, and fixed the assessment in the amounts already stated. From that assessment an appeal was taken to the district court of Laramie County.

Referring first to the sales tax, and the interest and penalty in connection therewith, section 7 of the Sales Tax Act provides:

"If the amount paid is less than the amount due, the difference together with interest thereon at the rate of one per cent per month from the time the return was due shall be paid by the vendor. * * * If any part of the

deficiency is due to negligence or intentional disregard of authorized rules and regulations with knowledge thereof, but without intent to defraud, there shall be added ten per cent of the total amount of deficiency, and interest * * *."

It may be noted that the provision for interest is separate and distinct from that in regard to the penalty, and that only the latter is not assessable, unless the non-payment of the tax is due to negligence or intentional disregard of the rules and regulations. We find, accordingly, no warrant in the statute to relieve the appellant from the payment of interest, except as hereinafter mentioned. The State Board claims that the penalty was properly assessed. It was stipulated in the case when before the district court of the United States that the tax was not paid on advice of counsel. While part of the record in that court was introduced in evidence in the trial of this case, that stipulation was not. However, we think, it clearly appears from the litigation herein, including the appeal in this court, and from the difficulty of the question involved, that the appellants were justified and in good faith in contending that the sale tax was not due on the property sold by them outside of this state. The general rule is that a statute imposing penalties will not be extended to any taxes or persons not clearly within its terms. 61 C. J. 1483. It is not clear that it applies in this case, and we think, accordingly, taking all facts in this case into consideration, that the sum of $264.68 imposed as a penalty should not have been assessed and should be eliminated from the assessment, and the judgment herein corrected to that extent. Dravo Contracting Co. v. James, 114 F. (2d) 242; Comm. v. Machine Co., 120 Va. 835, 846, 92 S. E. 901; United States Trust Co. v. New Mexico, 183 U. S. 535, 22 Sup. Ct. 172, 46 L. Ed. 315.

The provisions as to the penalty in the Use Tax Act are quite different from those in the Sales Tax Act.

Section 8 of the former seemingly provides for cases in which returns have been made, and the tax has not been paid. That section does not apply to the appellants herein. Section 9 of the Act provides for cases in which partial returns and payments have been made, but in which there is a deficiency. That section, on which counsel for appellants rely, and which contains a provision similar to that in the Sales Tax Act, does not apply to them, for the reason that they made no returns of any use tax at all, and paid no such tax. Section 10 is evidently the section applicable to the appellants, which, so far as applicable here, provides as follows:

"If any person neglects or refuses to make a return required to be made by this act, the Board shall make an estimate for the period or periods in respect to which such person failed to make a return, based upon any information in its possession or that may come into its possession, of the amount of the total sales price of tangible personal property sold or purchased by such person, the storage, use or other consumption of which in this State is subject to the tax imposed by this Act, and upon the basis of said estimate compute and determine the amount required to be paid to the State, adding to the sum thus arrived at penalty equal to ten per cent thereof. All amounts determined to be due under the provisions of this section shall bear interest at the rate of one per cent per month, or fraction thereof, from the fifteenth day of the month for which such amounts were required to be reported to the Board until paid. * * * * Promptly thereafter the Board shall give to such person written notice of such estimate and penalty, the notice to be served personally or by mail in the same manner as prescribed for service of notice by the provisions of section 9 hereof."

Under this section penalty of 10% and interest is due whenever no returns have been made and the tax is not paid when due. It contains no such provision as the provision of the Sales Tax Act already discussed, by which we might be authorized to interfere with the assessment of the penalty. Courts do not, ordinarily, in

the absence of statutory authorization, have power to relieve delinquent tax payers from penalties incurred by violations of statutes providing therefor. 61 C. J. 1494; Camden Fire Ins. Co. v. Johnson, (Cal. App.) 109 P. (2d) 447. And see citations below.

Counsel for the appellants, however, argue that a special situation exists in this case; that the judgment in the District Court of the United States, heretofore mentioned, was res judicata between the parties; that, according to that judgment, the appellants could not be compelled to pay the tax until a hearing had been granted, and that, accordingly, no penalty or interest could be imposed until after such hearing had been granted; that the imposition thereof was erroneous and illegal; that at least until April 1, 1941, when the statutes adequately providing for a refund, heretofore mentioned, went into effect, the provisions in the sales and use tax acts were unconstitutional, since until that time there was no way in which a taxpayer could avoid the assessment of penalties and interest by payment of the tax and suit to recover. They cite Ex Parte Young, 209 U. S. 123, 28 S. Ct. 441; Missouri Pacific Ry. Co. v. Tucker, 230 U. S. 340, 33 S. Ct. 961; Madley Southern Ry. Co. v. Georgia, 235 U. S. 651, 35 S. Ct. 214; Western Union Tel. Co. v. State of Indiana, 146 Ind. 54, 44 N. E. 793; Western Union Tel. Co. v. State of Indiana, 165 U. S. 304, 17 S. Ct. 345, and Dravo Constructing Co. v. James, 114 F. (2d) 242. Counsel for the Board contend that the unconstitutionality of the Taxing Acts, or any part thereof, cannot be considered by this court, for the reason that it was not pleaded in this case, and that no provision in the constitution, either of the United States or of this state, has been pointed out. We think, however, that the contentions of appellants, considered as a whole, are broader, and that, accordingly, we should consider them.

The cases of Wetsern Union Telegraph Company v.

State of Indiana, cited by appellants, do not sustain their contentions. The other cases decided by the United States Supreme Court, cited to us, do not deal with taxation and do not have any bearing herein. The only case cited, which deals with any question at all like that at bar, is Dravo Contracting Co. v. James, supra. That case involved a gross income tax levied by West Virginia, part of such income at least being derived from transactions carried on in Pennsylvania. The validity of the assessment had been litigated in the courts, including the Supreme Court of the United States. And it is stated that "in this case it must be remembered that the legality of the entire tax was a matter of grave doubt until the decision of the supreme court, wherein its legality was held by a divided court". An assessment for income properly received in West Virginia was sustained. The court refused to impose any penalty or interest, because no assessment of the correct amount had even yet been made; the tax assessed was not serverable so that a taxpayer was given an opportunity of paying the amount properly due. "Until," states the court, "the amount of the tax is fixed, so that a taxpayer may know with certainty what amount he is required to pay, we think it would be inequitable to charge him with interest. Particularly is this true in view of the fact that taxpayer has been furnished no opportunity under the law of paying the tax under protest and suing for the recovery of the illegal portion."

The case at bar is quite dissimilar. It is made the duty of the taxpayer to make a return, accompanied by payment of the tax due in any one month, on or before the 15th of the succeeding month. Section 5 of the Sales Tax Act and Section 7 of the Use Tax Act. Presumably the taxpayer knows as well as, or better than, the State Board of Equalization, what taxes are due. The statute itself makes the assessment, and none is made or required to be made by the Board except in cases

in which the taxpayer is delinquent in his duties. No notice or hearing was necessary to make the appellants liable for the taxes actually due under the statute. It is stated in 26 R. C. L. 347 that "the right to notice and hearing does not extend to taxes of every description, but only to such as involve the exercise of a quasi-judicial power in the determination of amount. In the case of an excise not dependent upon the valuation of property and in which there is no discretion as to the amount, no notice of the assessment or levy of the tax is necessary, and the same is true in the case of poll taxes, and generally specific taxes on persons and things". In the case of Hagar v. Reclamation District, 111 U. S. 701, 4 S. Ct. 663, 28 L. Ed. 569, the Supreme Court of the United States said:

"Of the different kinds of taxes which the State may impose, there is a vast number of which, from their nature, no notice can be given to the taxpayer, nor would notice be of any possible advantage to him, such as poll taxes, license taxes (not dependent upon the extent of his business), and generally, specific taxes on things, or persons, or occupations. In such cases the legislature, in authorizing the tax, fixes its amount, and that is the end of the matter. If the tax be not paid, the property of the delinquent may be sold, and he be thus deprived of his property. Yet there can be no question, that the proceeding is due process of law, as there is no inquiry into the weight of the evidence, or other element of a judicial nature, and nothing could be changed by hearing the taxpayer. No right of his is, therefore, invaded. Thus, if the tax on animals be a fixed sum per head, or on articles a fixed sum per yard, or bushel, or gallon, there is nothing the owner can do which can affect the amount to be collected from him. So, if a person wishes a license to do business of a particular kind, or at a particular place, such as keeping a hotel or a restaurant, or selling liquors, or cigars, or clothes, he has only to pay the amount required by the law and go into the business. There is no need in such cases for notice or hearing. So, also, if taxes are imposed in the shape of licenses for privileges, such as

those on foreign corporations for doing business in the State, or on domestic corporations for franchises, if the parties desire the privilege, they have only to pay the amount required. In such cases there is no necessity for notice or hearing. The amount of the tax would not be changed by it."

See also 37 C. J. 208, 250; 61 C. J. 565.

The assessment made in this case is due to the default of the taxpayer, and was made only after the Board was compelled, at great expense, to audit the books of the appellants. The claim of appellants that they are relieved from the payment of penalties and interest by reason of the holding of the United States District court, heretofore set out, is not, we think, well taken. The court did not deal with any such question, but merely held that the assessment could not be irrevocably fixed until after a hearing. We do not construe the decision to be contrary to the authorities last above cited, or as deciding or attempting to decide that the penalties or interest could not be collected on the amounts actually ultimately and legally found to be due. The interest and penalty accrued, not by reason of the assessment made by the State Board of Equalization, though in conection therewith, but by reason of the taxing acts; they are due by virtue of these acts. And the difficulty confronting this court so far as the remission of the penalty in connection with the use tax is concerned, is the fact that this penalty had already accrued, under the provision of the statute, when the State Board of Equalization made its original assessment, by reason of the failure to make any returns and to make any payments. And we know of no authority, as already indicated, in the absence of power provided in the statute, that such penalty may be remitted. The assessment of such penalty is generally upheld. State v. Great Atlantic & Pacific Tea Co., 190 La. 925, 183 So. 292, certiorari denied 305 U. S. 637, 59 Sup. Ct. 108.

See County Board v. State, 239 Ala. 276, 194 So. 881; 61 C. J. 485; Commonwealth v. Canal Co., 50 Pa. St. 410; Decenial Digest Sec. 838. We might add that there is not the same reason for remitting it as in the case of the sales tax already considered. The use tax was upheld in principle as early as March 29, 1937, before appellant commenced work on the Seminoe Dam, in Henneford v. Mason, 300 U. S. 577, 57 Sup. Ct. 524, 81 L. Ed. 814, and we ourselves upheld such tax on March 21, 1939, in Continental Supply Company v. People, 54 Wyo. 185, 88 P. (2d) 488. In fact, the validity of that tax is not questioned herein. The claim that appellants are manufacturers, and therefore exempt from the payment of the use tax, is, as we have held, not valid, and the cases which we have cited on that point show that it was at least doubtful whether such claim would be sustained. And the cases generally hold that a taxpayer litigates a tax at his peril. 61 C. J. 1490, par. 2139; 61 C. J. 1518, par. 2226. If the taxpayer in this case had made returns as the statute requires, claiming that it was exempt from the payment of the tax, or had, when the disallowance of such exemption became known, promptly brought an action for a declaratory judgment, a different question might be presented. But the appellants failed to do this.

Appellants claim, as already stated, that since we had no statute until April 1, 1941, adequately providing for the recovery of illegal taxes paid, no interest or penalty may be recovered. But we are unable to see how that fact helps them, for this case does not involve any illegal taxes. The assessment made was valid, as we have held. True, the State Board of Equalization originally demanded more than was due. But we know of no authority which would justify us in remitting on that account, interest or penalty on the amount actually found to be due. See 61 C. J. 1491. It has been held that no interest or penalty will be charged if the

amount due cannot be determined by the taxpayer or if the demand made is such that the taxpayer must pay the illegal amount along with the legal. Ritterbusch v. Ry. Co., 198 Fed. 46; State v. Great Northern Ry Co., 160 Minn. 515; City of Galveston (Tex. Civ. App.) 214 S. W. 766; 61 C. J. 1489, 1518. But this is not such a case. The items on which the taxes were due were separable, and appellants are chargeable under the law with knowledge of the amount which they should have paid. And if they had tendered the amount due, and kept the tender good, they would not have been chargeable with any future interest. 61 C. J. 1517, and see page 1490. In the absence of such tender, they cannot ordinarily complain. State v. Several Parcels, 82 Nebr. 570, 575, 114 N. W. 263; Western Union Tel. Co. v. State, 64 N. H. 265; 61 C. J. 1517.

Still, we cannot overlook the holding of the U. S. District Court that the appellants were wrongfully, under the statute as it then read, denied a hearing. That holding is not questioned. Payment of interest is in the nature of a penalty (61 C. J. 1516), though treated separately by the statute. It is assessed on account of default or delay. It is held that there must be an opportunity to pay the tax in order that a penalty may be collected. 61 C. J. 1489. We think that this rule should apply to the interest payable in this case. When a taxpayer has been wrongfully deprived of a hearing to which he is entitled, it can hardly be said that during that time he had that fair and full and unembarrassed oportunity to pay to which he is entitled. In such case the wrong is not one-sided, and the state should not be able to profit by its own wrong. Equitable considerations will not be entirely disregarded even in tax cases. United States Trust Co. v. New Mexico, supra. We think, accordingly, that from the time when the hearing was refused on October 5, 1939, to the time it was had on May 6, 1941, no interest should be

charged on any of the assessments, and that amount should be eliminated therefrom, and the judgment of the trial court should be modified and corrected in that respect.

The judgment of the district court must, accordingly, be modified by eliminating the penalty of $264.68 and the interest during the period above mentioned, and as so modified will be affirmed.

*Modified and Affirmed..*

KIMBALL, Ch. J., and RINER, J., concur.