**FRONTIER TAXIDERMIST, INC., a Wyoming Corporation, Appellant (Plaintiff below),**

v.

**WYOMING ·DEPARTMENT OF REVENUE, State Tax Commission, State of Wyoming, Appellee (Defendant below).**

No. 4049.

Supreme Court of Wyoming.

June 15, 1972.

Hanes, Carmichael, Johnson & Gage, and Jack R. Gage, Cheyenne, for appellant.

Robert J. Oberst, Sp. Asst. Atty. Gen., Cheyenne, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN and GUTHRIE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Frontier Taxidermist, Inc., was on audit assessed an additional $4,624.78 by the Sales Tax Division of the Department of Revenue, plus penalty and interest.[1] Plaintiff paid the assessment under protest and filed suit alleging that the amount was erroneously and wrongfully levied, demanding judgment for the $4,624.78. Defendant denied generally and counterclaimed for interest in the sum of $554.62. Trial was had to the court which found generally in favor of defendant, allowing its counterclaim of $554.62. Plaintiff has appealed from the judgment entered against it.

The assessed corporation is in the business of preparing animal trophies from game animals, 90 percent of its business being from people residing outside the State (10 percent thereof from foreign countries).[2] In its appeal plaintiff takes the position:

"1. The statutory language in question very clearly relates to a tax upon 'serv-

---

1. The taxing statute, § 39–291(e), W.S. 1957 (1971 Cum.Supp.), provides in pertinent part that an excise tax of 3 percent shall be levied on "all services for the repair and alteration of tangible personal property."

2. According to the trial court's findings of fact:
    "Frontier Taxidermists are in the business of transforming animal trophies from game animals; they take the form of mounted heads, mounted animals, fish and birds, rugs with and without heads and the tanned skins

of animals taken during the hunting season. * * *
    "* * * From living wild animal to trophy involves quite a number of steps, beginning with the hunter making his kill and skinning out in the field. Upon being received by the taxidermist, the hides must be scraped and promptly salted, otherwise they would spoil. The customer upon either bringing the trophy to the place of business of plaintiff or shipping by mail or freight advises what he desires. Plaintiffs are equipped to prepare full mounts of an entire animal,

ices.' Frontier contends that taxidermy is not a service, rather it is a long, involved, complicated, and detailed procedure that meets all the legal definitions and criteria of a manufacturing process, therefore, its business income is not subject to the tax in issue.

"2. Assuming, without conceding that taxidermy is a service, the state is foreclosed from assessing a sales, gross receipts, or excise tax upon the dollar value of Frontier's interstate sales, as such a tax represents a burden on Interstate Commerce in violation of Article I, § 8, of the United States Constitution, otherwise known as the Commerce Clause."

In developing the postulate that taxidermy such as engaged in by it is a manufacturing process rather than a service and is therefore exempt from the tax, plaintiff concedes that no case has been found dealing with taxidermy and seeks to discharge its burden by "the use of analogy," citing a number of cases. We could, of course, analyze these authorities case by case, but the circumstances and the products discussed in each of these are so different from those in issue here that in the ultimate this would accomplish little. Suffice to say that we have carefully examined the authorities presented and find them to be unpersuasive.

It is of general interest to observe certain standard definitions which are germane to the problem before us. Websters' Third New International Dictionary, p. 2345 (1961), defines taxidermy as "the art of preparing lifelike representations of animals by stuffing the skin or usu. by fashioning a wooden or plaster model on which the skin of the specimen (as a bird or mammal) is mounted or by molding and painting a plastic replica of the specimen (as a fish or reptile)." 26 Encyclopedia Americana, p. 322 (International Edition 1971), defines taxidermy as "the art of

a shoulder display, rugs either with or without heads, tan hides and arrange the making of gloves and other leather items from the hides. Some animals are mounted upon a base in lifelike manner.

"After the hide and head and horns, if included, are prepared for mounting by a tanning and preserving process, a frame is built out of paper and wire to match as nearly as possible the configuration of the animal taken. From this a mold is made and a paper carcass is constructed. Teeth, gums and tongue, along with eyes are installed and the skin and head is sewn onto the completed form. The base, if used, is molded out of red rosin paper and glue and painted to resemble rocks or some other background. Heads are mounted on shields, ordinarily. There are some variation[s] in the preparation of birds and fish, due to their tender body coverings.

"The establishment in which the plaintiff does business has six to seven thousand square feet of working area and at the moment they employ six full-time and three part-time employees. Storage must be provided for the body forms with the hope that another trophy of the same size and and shape will be received; it was estimated that about 1000 of these are presently on hand and that the old forms were used in about fifty percent (dollar-wise) of the cases. Extra hides and horns are kept in stock. These are used for customers who do not furnish their own raw hide and horns or to replace unsuitable ones furnished by the customer. These latter items are purchased from hunters principally around Dubois, Wyoming, and result from hunting by members of the Plaintiff's company, as well. Materials run one-quarter to one-third of the cost of producing a trophy.

"Under the agreement with customers, used by plaintiff, title passes to the plaintiff when the customer's hide and horns are turned over to it. This is principally for fire and theft insurance. The customer does not always get back his own hide and horns because of spoilage or for some reason, what the customer has furnished is not satisfactory. Occasionally customers do not claim their trophies and they are sold. The price of a finished trophy is about the same whether an individual brings in his own animal or not. The plaintiff pays no sales tax to anyone for materials used. Plaintiff has paid sales tax on leather goods sold to customers such as gloves made from skins."

preserving the skins of birds, mammals, fish, and reptiles and stretching them over artificial body forms to represent the living animal in a lifelike and characteristic attitude." Websters', supra at 63, defines alteration as "the act or action of altering" and alter as "to cause to become different in some particular characteristic * * * without changing into something else * * *." Plaintiff does not dispute the State's assertion that courts [3] have held alteration to be a change in the form or nature of the thing altered without destruction of its existence or loss of its identity.

From the evidence adduced in the present case, there is no question that the taxidermy here employed is of the type mentioned in the definitions except that the plaintiff's operations are perhaps more specialized and modernized than some. The trial court's penetrating examination of the case is worthy of some mention. After the court's detailed description of the business, a delineation of the issues, a notation that what taxidermy is, as far as taxation is concerned within the State of Wyoming, is a question of first impression, and reference to Morrison-Knudson Co. v. State Board of Equalization, 58 Wyo. 500, 135 P.2d 927, where the court decided that a dam and power plant was not a manufactured article but rather was construction, the trial court stated:

> "As said in Morrison-Knudson, supra, 514 [135 P.2d 927] the word 'manufacture' seems to refer in its ordinary sense to goods, wares, and merchandise, to the making of articles of commerce ordinarily the subject of barter and sale. The work done on a customer's animal remains is not such. As explained in that case, in its narrow technical sense, putting something together is probably to 'manufacture.' It can be said that the housewife manufactures a pie when she puts together the various ingredients. When a bartender puts together the components, he 'manufactures' a highball.

When the painter assembles his paints in a particular form on a piece of canvas and frames it, he has 'manufactured' a picture. A custom mechanic may assemble and shape various parts into a special sort of an automobile, consistent with the customer's desires and in doing so he technically 'manufactures' an automobile. A druggist compounds various chemicals and thus 'manufactures' a particular medicine prescribed by the doctor but in doing so he is not manufacturing in its ordinary sense. These people are not manufacturers but are respectively a cook, an artist, a customizer and a druggist.

"Let us take a look at some of the various businesses and services outlined in Section 39–291(e). Machine shops for example, take all sorts of pieces of metal and machinery brought to them by customers and alter them to fit the customers['] requirements. The photo developer and enlarger takes the customer's film upon which has been exposed the image of a particular scene or portrait or a sentimental family gathering or object, runs it through a developer, produces a negative, projects it upon paper which he furnishes and in some cases even provides a frame. The exposed piece of raw film has taken on a form special to that customer. The tire recapper will take the customer's tire and put on a new tread. The welder will take the customer's metal and by gas or arc methods put the customer's metal into the shape or form ordered. By all of these operations, the various businesses and services are altering the customer's property and technically 'manufacturing' a product but none in their ordinary sense can be termed manufacturers.

> *   *   *   *   *   *

"The reasoning of the defendant in its brief, together with the foregoing thoughts of the Court, leads to the conclusion and the Court finds that taxider-

---

3. Hamilton v. Link-Hellmuth, Inc., 104 Ohio App. 1, 146 N.E.2d 615, 618; Noyes v. Rothfeld, 191 Misc. 672, 78 N.Y.S.2d 433, 436.

my is the alteration of tangible personal property and not manufacturing."

No basis occurs to us for disagreeing with the trial court's views thus expressed; and while we think the contentions of the plaintiff are most ingenious and resourceful, they are insufficient to disclose any reason for reversal on the aspect which concerns taxidermy being service rather than manufacture.

In plaintiff's argument on point two, it assumes without conceding that taxidermy is a service, but contends that the State is foreclosed from assessing the tax on the interstate sales. While we recognize the importance of the commerce clause, the necessity of not letting individual states burden interstate commerce by erecting trade barriers, and of keeping the fifty states on a common market basis, we cannot accept plaintiff's position that the holding in Freeman v. Hewit, 329 U.S. 249, 67 S.Ct. 274, 91 L.Ed. 265, placed Frontier in the position of having made out a prima facie case simply by showing that a 3 percent tax on its gross business was imposed without regard to customers' residences.

Even were we to grant that the incidents involved in the present case placed the plaintiff's business in interstate commerce and that in effect the tax assessed was based on gross receipts, the tax could not, absent a showing that it resulted in either discrimination against or multiple taxation on interstate commerce, be held unconstitutional. General Motors Corp. v. Washington, 377 U.S. 436, 446–449, 84 S. Ct. 1564, 12 L.Ed.2d 430 (rehearing denied 379 U.S. 875, 85 S.Ct. 14, 13 L.Ed.2d 79). In that case the court while observing that local taxes measured by gross receipts from interstate commerce have not always

fared as well as other tax forms, stated, 377 U.S. at 440–441, 84 S.Ct. at 1568:

"A careful analysis of the cases in this field teaches that the validity of the [gross receipts] tax rests upon whether the State is exacting a constitutionally fair demand for that aspect of interstate commerce to which it bears a special relation. For our purposes the decisive issue turns on the operating incidence of the tax. In other words, the question is whether the State has exerted its power in proper proportion to appellant's [the taxpayer's] activities within the State and to appellant's consequent enjoyment of the opportunities and protections which the State has afforded. * * *"

Almost thirty years ago, Mr. Justice Blume in Morrison-Knudson Co. v. State Board of Equalization, supra, 135 P.2d at 934, took note that it was not the purpose of the commerce clause to relieve those engaged in interstate commerce of their just share of state tax burdens merely because of an incidental or consequential effect of the tax as an increase in the cost of doing business. The record before us reflects neither discrimination, nor multiple taxation, although there was effected, of course, an indirect burden.

Since if plaintiff's services were interstate in character the taxation thereof was not shown to be unconstitutional, we perceive no reason to address ourselves to whether they were in fact, as defendant argues under the holding of Department of Treasury of Indiana v. Ingram-Richardson Manufacturing Co. of Indiana, 313 U.S. 252, 61 S.Ct. 866, 85 L.Ed. 1313, merely an intrastate activity.

We find no error in the judgment of the trial court, and accordingly, it is affirmed.

Affirmed.